BRUNS VOLKSWAGEN, INC., and Universal Underwriters Insurance Company, Plaintiffs-Appellants,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Labor & Industry Review Commission and Mathew J. Baumgartner, Defendants-Respondents.

Court of Appeals

*No. 81–1972. Submitted on briefs June 2, 1982.— Decided December 21, 1982.*
(Also reported in 328 N.W.2d 886.)

320

For the plaintiffs-appellants the cause was submitted on the brief of *Schlotthauer & Johnson* of Madison.

For the defendant-respondent Department of Industry, Labor and Human Relations, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Foley, J.

GARTZKE, P.J. Bruns Volkswagen appeals from the circuit court's judgment affirming an award of worker's compensation benefits to Mathew Baumgartner. The issues are whether Baumgartner's injury arose out of his employment and whether he was performing services growing out of and incidental to his employment at the time of the injury. The hearing examiner resolved those issues in favor of the employee, the Labor and Industry Review Commission affirmed those findings, and the trial court affirmed. We affirm.

The facts are essentially undisputed on appeal. Baumgartner was foreman of the Bruns automobile repair shop. August 18, 1978, while waiting at the parts counter for repair parts, Baumgartner and a Bruns mechanic began wrestling. Baumgartner injured his knee. All parties agree the incident was horseplay and free of enmity. Due to the nature of the work and the ages of the employees, horseplay (generally throwing small objects) was fairly common in the shop. No one had ever been disciplined for horseplay in the shop.

The examiner found that the wrestling constituted an insubstantial deviation from Baumgartner's employment, that the amount of horseplay in the shop and the employer's failure to discipline horseplay brought the wrestling into the scope of employment, and that Baumgartner's injury arose out of his employment while he was performing services incidental to and growing out of his employment.

Section 102.03(1), Stats.,[1] provides in relevant part:

Liability under this chapter shall exist against an employer only where the following conditions concur:

. . . .

(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment. . . .

. . . .

(e) Where the accident or disease causing injury arises out of his employment.

. . . .

Both statutory conditions must be met. *Goranson v. ILHR Department*, 94 Wis. 2d 537, 549, 289 N.W.2d 270, 276 (1980).

Application of the statutory provisions in our Worker's Compensation Act to undisputed facts is a question of law. *Gunderson v. Industrial Comm.*, 218 Wis. 248, 250, 260 N.W. 636, 637 (1935). We are not bound by DILHR's conclusions of law. *United Way of Greater Milwaukee v. DILHR*, 105 Wis. 2d 447, 453, 313 N.W.2d 858, 861 (Ct. App. 1981). We will, however, sustain DILHR's conclusion of law if it is reasonable, even if an alternative view is equally reasonable. *Id.*

1. *Service Growing Out Of And Incidental To Employment*

Baumgartner was on the employer's premises and engaged in his usual duties just before he was injured. He was therefore performing a service growing out of and incidental to his employment within the meaning of sec. 102.03(1)(c)1, Stats., unless he deviated from that employment by wrestling.

---

[1] Section 102.03(1)(c)1, Stats., was amended in respects not material to this appeal by sec. 6, ch. 92, Laws of 1981.

Bruns relies on two precedents for the proposition that Baumgartner's wrestling constituted a substantial deviation from his duties. In *State Young Men's C. Asso. v. Industrial Comm.*, 235 Wis. 161, 292 N.W. 324 (1940), a summer camp counselor injured his eye when playing tennis while he was on call for infirmary duty. Emphasizing that the counselor "was exercising a personal privilege apart from any interest of the employer, the nature of which cannot be considered as being for the benefit of the employer," 235 Wis. at 164, 292 N.W. at 325, the supreme court held that the injury did not arise out of and in the course of employment. In *Brynwood Land Co. v. Industrial Comm.*, 243 Wis. 380, 10 N.W.2d 137 (1943), a golf caddy lost an eye while playing jackknife baseball during an interval between caddying assignments. Relying on *State Young Mens' C. Asso.*, the *Brynwood* court held that a finding that the caddy's injury arose out of and in the course of his employment under sec. 102.03 (1) (e), Stats., was not sustained by the evidence.

Neither *State Young Men's C. Asso.* nor *Brynwood* has been expressly overruled by the supreme court of this state. Both are pertinent to the requirement of sec. 102.03 (1) (c) 1, Stats., that at the time of the injury the employee is performing services growing out of and incidental to his employment. That requirement refers to the time, place and circumstances of the accident in relation to the employment. *Goranson*, 94 Wis. 2d at 549, 289 N.W.2d at 276.

DILHR argues *State Young Men's C. Asso.* and *Brynwood* are outmoded, citing *Maahs v. Industrial Comm.*, 25 Wis. 2d 240, 130 N.W.2d 845 (1964). In *Maahs* the question was whether an employee's deviation from his employment to satisfy his personal curiosity defeated coverage under sec. 102.03 (1) (c) 1, Stats. In that case, a filling station employee was washing a sheriff's car. The employee opened a box in the car, found what he

thought was a flashlight, and pressed a button on the object. He lost an eye when the object, a teargas billy, exploded.

The *Maahs* court rejected the strict rule it had applied in *Guenther v. Industrial Comm.*, 231 Wis. 603, 286 N.W. 1 (1939), and *Peterman v. Industrial Comm.*, 228 Wis. 352, 280 N.W. 379 (1938), that an employee breaks the master-servant relationship by momentarily stepping aside from employment to satisfy an idle curiosity. The *Maahs* court adopted the view of Professor Larson in the then current edition of Larson, *Law of Workmen's Compensation*. Under that view, whether in the form of horseplay or some momentary act inspired by curiosity, foolery should have the benefit of the general rule that insubstantial deviations, which do not measurably detract from the work, should not be treated as departures from the scope of employment. *Maahs,* 25 Wis. 2d at 243, 130 N.W.2d at 847.

*Maahs* is inconsistent with *State Young Men's C. Asso.* and *Brynwood.* If the decisions of the supreme court are inconsistent, we should follow that court's practice of relying on its most recent pronouncement. *Purtell v. Tehan,* 29 Wis. 2d 631, 636, 139 N.W.2d 655, 658 (1966). Accordingly, we agree with DILHR that *State Young Men's C. Asso., supra,* and *Brynwood, supra,* are no longer controlling. Because the *Maahs* court relied on the views of Professor Larson on injuries resulting from curiosity, we conclude that our supreme court will accept the same authority's views on horseplay.

Professor Larson concludes that minor acts of horseplay may be found to be insubstantial, and that whether particular horseplay is a deviation from the course of employment depends on:

(1) the extent and seriousness of the deviation, (2) the completeness of the deviation (i.e., whether it was

commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay.

1A Larson, *Workmen's Compensation Law* sec. 23.00 at 5–122 (1979).

Larson distinguishes between horseplay which interrupts duties requiring the employee's attention and horseplay while the employee has nothing to do. He suggests that if no duties were to be performed during a work lull, none could be abandoned, and "if idleness is a fixture of the employment, its handmaiden mischief is also." Larson, sec. 23.65 at 5–157. He concludes "that the duration and seriousness of the [horseplay] deviation which will be called substantial should be somewhat smaller when the deviation necessitates the dropping of active duties than when it does not." Larson, sec. 23.65 at 5–162.

The employer argues that Baumgartner's wrestling constituted a substantial deviation from his employment because he was a foreman. The service manager testified that he considered horseplay to be against his rules and that he had orally reprimanded other employees for engaging in horseplay. On the other hand, the wrestling was of short duration, impulsive, and occurred during a natural lull in service for the employer. Horseplay generally, due to the nature of the work and the ages of the employees, was fairly common and had gone undisciplined in the shop.

However reasonable the employer's arguments as to the substantiality of the deviation, we are bound by DILHR's equally reasonable conclusion that it was insubstantial. *United Way of Greater Milwaukee, supra.* Be-

cause the deviation was insubstantial, we affirm DILHR's conclusion that, at the time of his injury, the employee was performing service growing out of and incidental to his employment.

### 2. *Arising Out Of Employment*

A finding that an employee was performing services growing out of and incidental to his employment does not require a finding that the employee's injuries arose out of his employment. *Goranson,* 94 Wis. 2d at 550, 289 N.W.2d at 276–77.

The "positional risk" doctrine is applied when determining whether an injury arises out of employment. *Goranson,* 94 Wis. 2d at 555, 289 N.W.2d at 279. Under that doctrine:

> " '[A]ll that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose.' " *Butler v. Industrial Comm.,* 265 Wis. 380, 385, 61 N.W. (2d) 490 [, 492 (1953)]. In other words, there is a causal connection between the employment and the injury where the employee is obligated by his employment to be present at the place where he encounters injury through the instrumentality of a third person or an outside force. Such cases include, among others, accidents arising from *horseplay,* weather conditions, and assaults.

*Nash-Kelvinator Corp. v. Industrial Comm.,* 266 Wis. 81, 86, 62 N.W.2d 567, 570 (1954) (emphasis added). In *Cutler-Hammer, Inc. v. Industrial Comm.* the court said:

> The "positional risk" interpretation has been phrased in various ways. The core of the idea is that an accident arises out of the employment when the connection between the employment and the accident is such that the obligation or circumstances of the employment places the

employee in the particular place at the particular time when he is injured by a force which is *not solely personal to him.*

5 Wis. 2d 247, 253, 92 N.W.2d 824, 827 (1958) (emphasis added).

DILHR could have reasonably concluded that Baumgartner's injury was inflicted by a source personal to him. It was equally reasonable for DILHR to conclude on this record that horseplay was part of the workplace environment. That being the case, employees participating in such horseplay are within the zone of risk created by the circumstances of the employment. Because DILHR's conclusion that the injury arose out of the employment is as reasonable as a contrary conclusion, we adopt the agency's resolution of the issue. *United Way of Greater Milwaukee, supra.*

*By the Court.*—Judgment affirmed.