Eugene NIGBOR (Deceased), and Glenda Nigbor, Plaintiffs-Appellants,†

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, McQuay Perfex Corporation, Liberty Mutual Insurance Company and the State of Wisconsin, Defendants-Respondents.††

Court of Appeals

No. 82–2357. Submitted on briefs September 19, 1983.— Decided October 20, 1983.
(Also reported in 340 N.W.2d 918.)

† Petition to review granted.
†† Petition to cross-review pending.

For the plaintiffs-appellants the cause was submitted on the briefs of *Richard J. Rathjen* and *Rudolph, Kubasta, Rathjen & Murach* of Wautoma.

For the defendant-respondent Department of Industry, Labor and Human Relations the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Gordon Samuelsen,* assistant attorney general.

For the defendants-respondents McQuay Perfex Corporation and Liberty Mutual Insurance Company the cause was submitted on the brief of *M. Christine Cowles* and *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. This is an appeal from a judgment of the circuit court affirming an order of the Labor and Industry Review Commission denying worker's compensation benefits for the death of appellant's husband. Three issues are presented. First, whether the circuit court was competent to render a valid judgment.[1] Second, whether, at the time of his fatal injury, decedent was performing services growing out of and incidental

---

[1] The parties and the circuit court treated this as a question of subject matter jurisdiction. In *Mueller v. Brunn,* 105 Wis. 2d 171, 176, 313 N.W.2d 790, 792 (1982), the court said:

[S]ubject matter jurisdiction is vested by the constitution in the courts of the State of Wisconsin. No circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever. We recognize, however, that the legislature has the authority to abolish heretofore recognized common law actions (*e.g.,* breach of promise suits) and may set standards for exhaustion of administrative remedies or for primary jurisdiction

to his employment. Third, whether decedent's fatal injury arose out of his employment. We affirm on the first two issues and do not reach the third.

## FACTS

Decedent, Eugene Nigbor, was employed by the McQuay Perfex Corporation as a rap-squeeze molding machine operator. The machine operated by decedent, called a squeezer, consisted of a flat bed upon which sand mold boxes were placed and an overhead arm with a plate extended over the mold box. In order to compress the mold, the operator would pull a lever causing the flat bed to move the mold box up hydraulically, about eight to twelve inches, in contact with the overhead plate. This cycling of the machine occurred with great speed and force, taking only a split second for the mold box to hit the overhead plate.

On Friday, August 18, 1978, decedent worked his usual shift from 6:00 a.m. to 3:00 p.m. On Saturday, August 19, 1978, decedent and his co-workers worked an extra shift from 12:00 a.m. to 8:00 a.m. The accident causing decedent's death occurred at approximately 7:30

---

prior to the proper invocation of the court system's subject matter jurisdiction.

The court in *Mueller*, 105 Wis. 2d at 177, 313 N.W.2d at 793, accepted the *Restatement of Judgments*, ¶ 7, *Comment a* (1942), which provides in part:

*"Requirement of competency of the court.* . . . Although a State has jurisdiction over the person of the defendant, it may not have given to a particular court or it may not have given to any of its courts power to entertain the action. In such a case the court has no 'competency' to render a valid judgment. The court has no power to render a valid judgment, not because the State lacks power but because it has not conferred power upon the court."

We conclude that the issue is whether the circuit court was competent to render a valid judgment.

a.m. during the extra shift. As a joke, decedent put his head between the overhead plate and an empty sand mold box on his squeezer. As he called to gain the attention of one of his co-workers and waved his arms up and down, his right hand hit the activating lever of the squeezer. The machine cycled, causing fatal injuries to decedent's neck and head.

## JURISDICTION

The caption of the summons and complaint named the Department of Industry, Labor and Human Relations as a defendant rather than the Labor and Industry Review Commission. DILHR moved to dismiss the complaint because LIRC was not named in the summons and complaint. Because the facts are undisputed, the question whether the circuit court lacked competency is one of law. *Dept. of Revenue v. Bailey-Bohrman Steel Corp.,* 93 Wis. 2d 602, 606, 287 N.W.2d 715, 717 (1980). "This court owes no deference to the trial court's resolution of issues of law." *Katze v. Randolph & Scott Mut. Fire Ins. Co.,* 111 Wis. 2d 326, 330, 330 N.W.2d 232, 234 (Ct. App. 1983).

The supreme court has required strict compliance with sec. 102.23, Stats. *Cruz v. ILHR Department,* 81 Wis. 2d 442, 448, 260 N.W.2d 692, 693 (1978). Where only insubstantial and technical defects appear on the face of the pleadings, however, and the appeal is brought in good faith, a trial court abuses its discretion by dismissing the complaint. *Id.* at 453, 260 N.W.2d at 696. The defect in *Cruz* found to be insubstantial was the substitution of "County Court: Milwaukee County" for "Circuit Court: Dane County" in the caption of the case. *Id.* at 446, 260 N.W.2d at 693.

Using the *Cruz* rationale, there is nothing of record that suggests this appeal was not brought in good faith. DILHR's motion to dismiss is no less "technical and insubstantial" than was the demurrer in *Cruz*. Consequently, the circuit court was competent to decide this case.

## STANDARD OF REVIEW

The application of a particular legal standard to a certain set of facts is a question of law, *Nottelson v. ILHR Department*, 94 Wis. 2d 106, 116, 287 N.W.2d 763, 768 (1980), including the determination whether the statutory standards of the Worker's Compensation Act apply to undisputed facts. *Bruns Volkswagen, Inc. v. DILHR*, 110 Wis. 2d 319, 322, 328 N.W.2d 886, 888 (Ct. App. 1982).

When reviewing an administrative agency's conclusions of law, the reviewing court is not bound by those conclusions but will sustain them if reasonable, even though an alternative view exists that is equally reasonable. *Id.* The reviewing court acknowledges that the administrative agency has special expertise in making the value judgments that lead to its conclusions of law. *Nottelson*, 94 Wis. 2d at 117, 287 N.W.2d at 768 (1980).

Therefore, LIRC's conclusion whether decedent was performing services growing out of and incidental to his employment at the time of his injury is a question of law, and this court will defer to that conclusion if reasonable.

## SERVICE GROWING OUT OF AND INCIDENTAL TO EMPLOYMENT

Section 102.03(1), Stats., sets forth the conditions of liability under the Worker's Compensation Act:

(c) 1. Where, at the time of injury, the employe is performing service growing out of and incidental to his employment.

. . .

(e) Where the accident or disease causing injury arises out of his employment.

Section 102.03 (1) requires the concurrence of all of the conditions of liability contained in the statute in order for liability to attach. Thus, the success of appellant's claim requires both that decedent, at the time of the accident, was performing services growing out of and incidental to his employment, and that the accident causing his death arose out of his employment. *Goranson v. ILHR Department,* 94 Wis. 2d 537, 549, 289 N.W.2d 270, 276 (1980).

The element of performing service growing out of and incidental to employment refers to the time, place, and circumstances of the accident in relation to the employment; the focus is on the nature of the employe's course of conduct. *Id.* If an employe is on the employer's premises, the employe is performing services growing out of and incidental to the employment. *Bruns Volkswagen,* 110 Wis. 2d at 322, 328 N.W.2d at 888. However, if the employe's conduct that led to the injury constitutes a substantial deviation from his employment, then the employe is not performing services growing out of and incidental to the employment. *Id.*

Decedent, at the time just before the accident, was at his place of employment, about thirty minutes before the end of his shift, and was making sand molds and doing other tasks assigned to him by his supervisor. Consequently, decedent was performing services growing out of and incidental to his employment unless his actions leading to his death were a substantial deviation from his employment.

This court looks to the views of Professor Larson on worker's compensation law as controlling authority on horseplay and deviations from the course of employment. *Id.* at 324, 328 N.W.2d at 889, citing *Maahs v. Industrial Comm.*, 25 Wis. 2d 240, 243, 130 N.W.2d 845, 847 (1964). Larson has established a four-part test for determining whether an act of horseplay constitutes a substantial deviation from the course of employment:

(1) [T]he extent and seriousnes of the deviation, (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay.

1A Larson, *Workmen's Compensation Law* sec. 23.00 at 5-122 (1979).

Additionally, Larson makes a distinction between horseplay that requires the dropping of active duties, and that which occurs during a time of idleness on the job: "[T]he duration and seriousness of the deviation which will be called substantial should be somewhat smaller when the deviation necessitates the dropping of active duties than when it does not." Larson, sec. 23.65 at 5-162.

LIRC found that the extent and seriousness of decedent's deviation was substantial based on the great risk of hazard inherent in the conduct.[2] That decedent's conduct was hazardous is made plain by the unfortunate

---

[2] All findings were made by a hearing examiner and affirmed by LIRC. We examine LIRC's findings, not those of the examiner. *Braun v. Industrial Comm.*, 36 Wis.2d 48, 55, 153 N.W.2d 81, 84 (1967).

facts of this case. A substantial deviation is the product of extent and seriousness. Both are not required in the same degree. Though the conduct occurred for only a few seconds, the great risk of hazard permitted the examiner to find a substantial deviation.

LIRC found that decedent's conduct required the abandonment of the duties of his employment. The testimony at the hearing made it clear that no cleaning procedure or customary operation of the squeezer required an operator to place any part of his or her body between the mold box and the overhead plate of the squeezer. Thus, decedent's conduct was not in any way related to the performance of the duties of his employment.

In finding that decedent's conduct had not become an accepted part of the employment, LIRC distinguished between non-hazardous horseplay that went on, such as hiding tools, greasing shovel handles or throwing sand, and horseplay involving the risk of serious bodily harm, putting a part of the body in a squeezer or jumping off a pallet with an air hose around the neck. Distinguishing acts of horseplay according to their relative risks of harm is reasonable. The testimony showed that while many workers engaged in non-hazardous horseplay, only decedent engaged in life-threatening horseplay.

Lastly, LIRC found that the extremely hazardous risk involved in decedent's conduct precluded a finding that this type of horseplay is to be expected while working an extra shift at a sand-molding machine. Other employees testified that they were not especially fatigued at the end of the extra shift, and even though there may be some additional non-hazardous horseplay during an extra shift, none of the employees ever saw anyone engage in life-threatening horseplay during any shift, except for decedent.

LIRC concluded that decedent's conduct leading to his death was a substantial deviation from the course of his employment, and, therefore, he was not performing ser-

vices growing out of and incidental to his employment at the time of the accident. We sustain this conclusion because it is reasonable. We may not go further and substitute our judgment for that of LIRC.

## ARISING OUT OF EMPLOYMENT

Because we have determined that decedent was not performing service growing out of and incidental to his employment at the time of his injury, liability does not attach and the question whether the injury arose out of the employment is moot. We therefore will not consider that issue.

*By the Court.*—Judgment affirmed.