Eugene NIGBOR (deceased), and Glenda Nigbor,
Plaintiffs-Appellants-Petitioners,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS,
Defendant-Respondent and Cross-Petitioner,

MCQUAY PERFEX CORPORATION, Liberty Mutual Insurance
Company, and the State of Wisconsin,
Defendants-Respondents.

Supreme Court

*No. 82–2357. Argued September 5, 1984.—Decided October 2, 1984.*

(Also reported in 355 N.W.2d 532.)

For the plaintiffs-appellants-petitioners there were briefs by *Richard J. Rathjen, Richard J. Dufour* and

*Rudolph, Kubasta, Rathjen & Murach,* Wautoma, and oral argument by *Richard J. Rathjen.*

For the defendant-respondent and cross-petitioner the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the defendants-respondents, McQuay Perfex Corporation and Liberty Mutual Insurance Company, there was a brief (in court of appeals) by *M. Christine Cowles* and *Borgelt, Powell, Peterson & Frauen, S.C.,* Milwaukee, and oral argument by *Clayton R. Hahn,* Milwaukee.

WILLIAM G. CALLOW, J. This is a review of a decision[1] of the court of appeals affirming the judgment of the circuit court for Waushara county, David C. Willis, Judge of Green Lake county presiding, which in turn affirmed an order of the Labor and Industry Review Commission denying worker's compensation benefits for the death of an employee who was killed at work. We affirm the court of appeals.

The issues presented for review are whether the circuit court had jurisdiction over the Labor and Industry Review Commission (Commission) in light of the fact that the caption of the summons and complaint named the Department of Industry, Labor and Human Relations (DILHR) rather than the Commission; and whether, at the time of his fatal injury, the decedent was acting within the course of his employment thereby entitling his spouse to death benefits under the Worker's Compensation Act.

Eugene Nigbor was employed by the McQuay Perfex Corporation as a rap-squeeze molding machine operator. This machine, commonly called a squeezer, consisted of a flat bed upon which sand mold boxes were placed and an overhead arm with a plate which extended over the mold

---

[1] *Nigbor v. Department of Industry, Labor & Human Relations,* 115 Wis. 2d 606, 340 N.W.2d 918 (Ct. App. 1983).

box. The mold box would be filled with sand, and the operator would pull a lever which caused the flat bed to hydraulically move the mold box up about one foot. The mold box would then come in contact with the overhead plate, and the sand would be compressed with great speed and force to make the mold.

On August 18, 1978, Nigbor had worked his regular 6 a.m. to 3 p.m. shift. He and his co-workers also worked an extra shift from 12 a.m. to 8 a.m. on August 19. The accident which caused Nigbor's death occurred at approximately 7:30 a.m. on August 19. While engaging in horseplay, Nigbor put his head between the overhead plate and an empty sand mold box which was resting on the flat bed. He then called to his co-workers to gain their attention and simultaneously waved his arms up and down. His right hand accidentally hit the activating lever of the squeezer. The machine cycled, causing fatal injuries to Nigbor's head and neck.

Glenda Nigbor, Eugene Nigbor's widow, filed an application for worker's compensation death benefits with DILHR. The hearing examiner entered an order on April 20, 1981, dismissing the application, finding that, at the time of his death, Nigbor had not been performing services growing out of and incidental to his employment. This decision was appealed to the Commission which affirmed the examiner's order on August 27, 1981.

On September 24, 1981, Glenda Nigbor commenced an action appealing the Commission's decision. The case was filed in Waushara county circuit court on September 28, 1981. The caption shown on the summons and complaint named DILHR as a defendant but did not name the Commission. The body of the complaint set forth the action taken by the Commission in affirming the examiner's findings.[2] The face of the original summons shows

[2] Paragraph 15 of the complaint alleged: "That on August 27, 1981, the Labor and Industry Review Commission issued an order which affirmed the findings and order of the examiner."

that the Commission acknowledged receipt of a copy of the summons and complaint on September 25, 1981. DILHR moved to dismiss the complaint on the ground that the court lacked personal and subject matter jurisdiction because the Commission was not named as a party as required by statute. The circuit court denied the motion to dismiss, concluding that the Commission had been properly served because it did receive a copy of the summons and complaint and that service on DILHR constituted service on all its subdivisions. Reaching the merits of the case, the circuit court affirmed the Commission's findings and the denial of benefits in that the horseplay which caused Nigbor's death was far outside of his normal work activity. The court of appeals affirmed the trial court's judgment, finding that the failure to name the Commission as a party was a technical defect which did not deprive the circuit court of jurisdiction over the Commission and that the Commission's conclusion that the conduct leading to Nigbor's death was a substantial deviation from the course of his employment was reasonable. Glenda Nigbor petitioned this court for review on the denial of benefits, and DILHR petitioned for review on the jurisdictional issue. We granted both petitions.

The first issue we decide is whether the circuit court had jurisdiction over the Commission in light of the fact that it was not named as a party to the action filed by Glenda Nigbor. The procedure whereby an aggrieved party may obtain judicial review of a commission order

Paragraph 16 of the complaint alleged: "That plaintiff, Glenda Nigbor, is aggrieved by reason of said findings and order or award, and brings this action for review of said findings and order upon the following grounds:

"(a) The findings of fact by the commission do not support its order or award. . . .

"(b) The commission acted in excess of its powers in making its findings. . . ."

has undergone several changes over the years. Prior to 1969 all actions for review were commenced against the Commission. In 1969 the statute was amended to provide that actions for review be brought against DILHR.[3] In 1979 the statute was again amended to provide that such actions be brought against the Commission.[4] The most recent change in party designation took effect on May 13, 1980, more than a year prior to the issuance of the Commission's order denying benefits for Nigbor's death. While the legislature's election to modify the statute on several occasions may have produced some confusion for aggrieved parties wishing to obtain judicial review, the law was clear in August of 1981 that the Commission, and not DILHR, was the proper party to the action. In addition, Glenda Nigbor also received express notice on how to obtain review of the Commission's decision.[5]

Section 802.04(1), Stats., sets forth the technical requirements for captions of actions. One requirement is that in the complaint the title of the action shall include

[3] Chapter 276, Section 392, Laws of 1969.

[4] Chapter 278, Section 13, Laws of 1979.

[5] The Commission's August 27, 1981, order stated, "SEE ENCLOSURE AS TO TIME LIMIT ON FURTHER APPEAL." The enclosure stated:

"Either party may commence a legal action for review of the Commission decision in Circuit Court within 30 days from the date of the decision. Such action is commenced only by serving a summons and complaint upon a Commissioner of the Labor and Industry Review Commission or an agent authorized by the Commission to accept service. Such service shall be deemed complete service on all parties but there shall be left with the person so served as many copies of the summons and complaint as there are defendants. Sec. 102.23(1)(a), Wis. Stats. as amended by Ch. 278, Laws of 1979, sec. 13. The complaint shall state the grounds upon which review is sought. The summons and complaint must be filed with the Circuit Court within six months from date of service. *The action must be commenced against the Commission,* and the party in whose favor the order or award was made must also be made a defendant." (Emphasis added.)

the names of all parties. The title of the caption in the complaint filed by Glenda Nigbor did not name the Commission as a party. However, this court has previously held that a caption is not a part of a pleading and that the nature of an action must be determined from the allegations of a pleading rather than its caption. *Lees v. ILHR Department,* 49 Wis. 2d 491, 496, 182 N.W.2d 245 (1971). Even though DILHR rather than the Commission was named in the caption, the body of Mrs. Nigbor's complaint clearly showed that her grievance was against the Commission.

Moreover, in *Cruz v. ILHR Department,* 81 Wis. 2d 442, 260 N.W.2d 692 (1978), we stated that, while we have required strict compliance with the terms of sec. 102.23, Stats., where the pleadings contain an insubstantial and technical defect and the appeal is brought in good faith, it is an abuse of discretion for the trial court to dismiss the action. *Id.* at 453. In *Cruz* an action for review was correctly commenced against DILHR within the thirty-day time limit, but the caption of the complaint improperly read "County Court: Milwaukee County" rather than "Circuit Court: Dane County." *Id.* at 446. The summons and complaint were correctly filed in Dane county circuit court. The trial court had dismissed the action based on the improper caption. We reversed, stating:

"The defects alleged here are of a hypertechnical nature, and the entire tenor of modern law is to prevent the avoidance of adjudication on the merits by resort to dependency on non-prejudicial and non-jurisdictional technicalities."

*Id.* at 449. We concluded that DILHR had received notice of the action, was completely aware of the claimant's intentions, and was in no way misled by the defect in the caption. *Id.* at 453.

The basic purpose of the Worker's Compensation Act is to give prompt relief to injured employees who are entitled to compensation. *Id.* at 449–50. We have repeatedly stated that the Act must be liberally construed to effectuate that policy which the legislature sought to advance by its passage. *State v. Industrial Comm.,* 4 Wis. 2d 472, 475, 90 N.W.2d 397 (1958).

There is no question but that the Commission received notice of the Nigbor appeal within the thirty-day period. The face of the original summons filed in the circuit court shows that the Commission acknowledged timely receipt of the summons and complaint. The Commission was aware that the action was pending and was in no way misled. The body of the complaint indicated that Mrs. Nigbor was seeking review of a Commission order. We conclude that the failure to name the Commission in the caption of the complaint was an insubstantial and technical error which did not deprive the trial court of jurisdiction over the Commission. However, even though we have reaffirmed the rule that the nature of an action must be determined from the allegations of the pleading rather than from the caption, *Lees v. ILHR Department, supra,* 49 Wis. 2d at 496, and have termed the defect here to be a hypertechnical one which did not deprive the court of jurisdiction, it is poor practice not to name parties defendant in the caption.

The next issue is whether, at the time of his fatal accident, Nigbor was acting within the scope of his employment so as to entitle his wife to death benefits under the Worker's Compensation Act. Section 102.03(1), Stats., sets forth the conditions of liability under the Act:

"(1) Liability under this chapter shall exist against an employer only where the following conditions concur:
". . . .

"(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment. Every employe . . . while on the premises of his employer . . . shall be deemed to be performing service growing out of and incidental to his employment.

"...

"(e) Where the accident or disease causing injury arises out of his employment."

In order for liability to accrue, it is necessary that the employee at the time of the accident be performing services growing out of and incidental to his employment and that the accident causing injury arise out of his employment. *Goranson v. ILHR Department,* 94 Wis. 2d 537, 549, 289 N.W.2d 270 (1980).

The court of appeals concluded that this issue presented a question of law and that, while a reviewing court is not bound by an administrative agency's conclusions of law, it will sustain them if reasonable, even though an equally reasonable alternative view exists. 115 Wis. 2d at 611. The issue requires the application of the statutory conditions set forth in sec. 102.03(1), Stats., to the facts relating to Nigbor's conduct.

In *Nottelson v. ILHR Department,* 94 Wis. 2d 106, 287 N.W.2d 763 (1980), we noted that one of the most troublesome issues in administrative law is determining whether the application of a statutory concept to a concrete fact situation should be treated as a question of fact or of law for purposes of judicial review. *Id.* at 115. We concluded in *Nottelson* that, regardless of how a question is labeled, when a Commission determination calls for a value judgment, this court must decide in each type of case the extent to which it should substitute its evaluation for that of the agency. *Id.* at 117. We further stated that, when the expertise of the agency is significant to the value judgment, the agency's decision, although not

controlling, should be given weight. *Id.* We conclude that the Commission has developed significant expertise in determining when an employee is acting within the scope of his employment and that Commission decisions in such matters should be given weight and deference. We will thus defer to the Commission's conclusions if they are found to be reasonable, even if this court would not have reached the same conclusions.

In determining whether an employee was performing service growing out of and incidental to his employment at the time of an accident, the focus is on the nature of the employee's course of conduct. *Goranson, supra,* 94 Wis. 2d at 549. In *Maahs v. Industrial Comm.,* 25 Wis. 2d 240, 130 N.W.2d 845 (1964), we moved away from the harsh rule that *any* deviation from employment would prevent an award of benefits and adopted the rule that an impulsive, momentary, and insubstantial deviation will not bar recovery. *Id.* at 244–45. *See also Bruns Volkswagen, Inc. v. DILHR,* 110 Wis. 2d 319, 328 N.W.2d 886 (Ct. App. 1982).

In determining whether the conduct which led to Nigbor's death constituted a substantial deviation from his employment, the Commission, as well as the trial court and the court of appeals, utilized the four-part test set out in 1A A. Larson, *The Law of Workmen's Compensation,* sec. 23.00 at 5–122 (1982). This court has previously cited Larson's treatise,[6] and we find his views on the subject to be persuasive. Larson states:

". . . [W]hether initiation of horseplay is a deviation from course of employment depends on

"(1) the extent and seriousness of the deviation, (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an

[6] *See Maahs v. Industrial Comm.,* 25 Wis. 2d 240, 243–44, 130 N.W.2d 845 (1964).

abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay."

We now must consider whether, in applying the Larson test to the facts of this case, the Commission could have reasonably determined that Nigbor had substantially deviated from his employment.

Because we give deference to the Commission's reasonable conclusions, we do not discuss employees' lapses from acceptable conduct at length. Rather, our discussion is limited to setting forth a rationale by which we may determine whether the Commission acted reasonably in reaching its decision.

(1) *The extent and seriousness of the deviation.* The Commission concluded that Nigbor's conduct constituted a serious deviation from his employment due to the substantial risk of hazard inherent in the conduct. The petitioner argues that Nigbor's deviation from work lasted no more than a few seconds, and if he had not accidentally tripped the lever and caused the machine to cycle, his conduct would merely have gotten a laugh from his co-workers and everyone would have gone back to work.

In its discussion of this factor, the court of appeals stated that the fact that Nigbor's conduct was hazardous was made plain by the unfortunate outcome of his conduct. 115 Wis. 2d at 613–14. We do not agree that the seriousness of a deviation from employment may be judged by the consequences of the conduct. Larson states:

"The substantial character of a horseplay deviation should not be judged by the seriousness of its consequences in the light of hindsight, but by the extent of the work-departure in itself. This is not always easy to do, especially when a trifling incident escalates or explodes

into a major tragedy." 1A A. Larson, *supra,* sec. 23.63 at 5–152.

To accept the view that the seriousness of a deviation is to be judged by its consequences would mean that compensation would be denied in any case where the conduct resulted in serious injury or death, even if the deviation was minor. This result would be unfair and would be contrary to the policies underlying the Worker's Compensation Act. Rather, the focus must be on the extent and seriousness of the deviation itself.

Nigbor was an experienced rap-squeeze molding machine operator. He was familiar with the operation of the machine and knew that it would cycle in a split second if the lever was activated. Although the act of placing his head in the squeezer took only a few seconds, the seriousness of a deviation may not be determined solely by considering the amount of time elapsed. Nigbor intentionally conducted himself in a manner which exposed him to an ultrahazardous risk. This constituted a serious deviation from his employment.

(2) *The completeness of the deviation.* The Commission found that Nigbor had to interrupt the usual operation of his work to engage in the conduct which led to his death. Testimony adduced at the hearing before the examiner showed that there was no work-related procedure which would have required Nigbor to place his head into the machine. Even though Nigbor was at his work station when the accident occurred, his conduct was in no way commingled with the performance of his job; his deviation from the course of his employment was complete.

(3) *The extent to which horseplay had become an accepted part of the employment.* The Commission found that, although some minor, nonhazardous horseplay—such as hiding tools or greasing shovel handles—had occurred in the past, the employer had discouraged such

conduct. The testimony of Nigbor's co-workers showed that he was a prankster. He had previously engaged in such activities as soaking his feet in a pail of water, taking off his pants, and pretending to hang himself with an air hose. Nigbor's supervisor admitted that he had heard about some of Nigbor's practical jokes but said that he had never seen any of these acts and had never had to reprimand Nigbor or any of the other employees for pulling pranks. The Commission distinguished between nonhazardous acts of horseplay—such as hiding tools—and hazardous conduct—such as the type which caused Nigbor's death. Even if some minor horseplay had become accepted on the job, it was reasonable for the Commission to conclude that the evidence failed to show that potentially hazardous horseplay had become an accepted part of the employment.

(4) *The extent to which the nature of the employment may be expected to include some horseplay.* There was some testimony at the hearing before the examiner which indicated there was a tendency for the amount of horseplay to increase when employees worked extra shifts, as they were doing when Nigbor was killed. However, there was no evidence to show that the particular conduct which led to Nigbor's death was in any way expected. Nigbor's act of placing his head in the squeezer was not an insubstantial deviation from work which could be expected from fatigued workers. Rather, the conduct involved a worker intentionally engaging in conduct which exposed him to an ultrahazardous risk. Even if minor acts of horseplay—such as greasing handles— could be expected to increase when employees worked extra shifts, hazardous conduct of the sort engaged in by Nigbor could not be anticipated.

██

We have stated we will defer to the Commission's conclusions if they are reasonable. We do not conduct an ab initio review but rather, determine whether the method

utilized by the Commission in reaching its decision was reasonable, even though this court might have reached a different conclusion. We conclude the method used by the Commission in reaching its decision was reasonable and that the Commission's finding—that Nigbor's conduct was a substantial deviation from his employment and, thus, that he was not performing services growing out of and incidental to his employment at the time of the accident—was reasonable.

*By the Court.*—The decision of the court of appeals is affirmed.