WISCONSIN DEPARTMENT OF REVENUE, Petitioner-Appellant,

v.

HERITAGE MUTUAL INSURANCE COMPANY, Respondent-Respondent.

Court of Appeals

*No. 95–3605. Submitted on briefs October 31, 1996.—Decided February 12, 1997.*

(Also reported in 561 N.W.2d 344.)

On behalf of the petitioner-appellant, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *F. Thomas Creeron III*, assistant attorney general.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James R. Lowe* of *Whyte, Hirschboeck, Dudek, S.C.* of Milwaukee.

Before Brown, Nettesheim and Anderson, JJ.

NETTESHEIM, J.   The Wisconsin Department of Revenue appeals from a circuit court order affirming a decision of the Wisconsin Tax Appeals Commission granting Heritage Mutual Insurance Company's

claims for a partial refund of taxes previously paid for the years 1987 and 1988.

The question in this case is whether Heritage took the proper deduction pursuant to § 71.45(2), STATS., 1987-88, when computing its Wisconsin taxable income. This statute requires an insurance company to "add back" certain interest and dividend income allowed as deductions under federal tax law. We agree with the Commission's determination that Heritage properly computed its Wisconsin taxable income pursuant to the statute and the relevant federal law. We therefore affirm the circuit court order upholding the Commission's ruling.

## *COMPUTATION OF TAXABLE INCOME*

Before we recite the facts, we set out the relevant federal and state tax law bearing on the issue before us.

The starting point for computing an insurer's net income for purposes of Wisconsin tax law is the insurer's federal taxable income. For federal purposes, the insurer must include investment income[1] and underwriting income.[2] However, federal tax law allows an insurer to deduct certain interest and dividend income when determining its federal taxable income.[3] These deductions include the interest earned on any

---

[1] "Investment income" means the gross amount of income earned during the taxable year from interest, dividends, and rents. *See* 26 U.S.C. § 832(b)(2).

[2] "Underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred. *See* 26 U.S.C. § 832(b)(3).

[3] Actually, the interest income is treated as an exclusion from gross income, *see* 26 U.S.C. § 832(c)(7), while the dividend income is treated as a deduction, *see* 26 U.S.C. § 832(c)(12). For ease of reference, we will refer to both categories as deductions.

state or local bond, *see* 26 U.S.C. § 832(c)(7), and certain dividends received, *see* 26 U.S.C. § 832(c)(12).

In addition, an insured is allowed to exclude from underwriting income its "losses incurred." *See* 26 U.S.C. § 832(b)(3). These losses include losses actually paid plus increases in the reserve for losses incurred but not yet paid. *See* 26 U.S.C. § 832(b)(5)(A)(i) & (ii). Prior to the Tax Reform Act of 1986, federal law did not place any limitation on this "losses incurred" deduction. However, the Tax Reform Act scaled back this deduction. It did so by creating a formula linked to the amounts of the interest and dividend deduction. Specifically, the Reform Act reduced the "losses incurred" deduction to 15% of the sum of the exempt interest income and the allowable dividend deductions. *See* 26 U.S.C. § 832(b)(5)(B).[4]

During this time, Wisconsin tax law remained constant. Both before and after the Tax Reform Act, § 71.45(2), STATS., 1987-88,[5] required a Wisconsin

---

[4] 26 U.S.C. § 832(b)(5) provides in relevant part:

**(5) Losses incurred.—**

  **(A) In general.**—The term "losses incurred" means losses incurred during the taxable year on insurance contracts . . . .

  **(B) Reduction of deduction.**—The amount which would (but for this subparagraph) be taken into account under subparagraph (A) shall be reduced by an amount equal to 15 percent of the sum of—

  **(i)** tax-exempt interest received or accrued during such taxable year, and

  **(ii)** the aggregate amount of deductions provided by section 243, 244 and 245 for—

  **(I)** dividends . . . received during the taxable year . . . .

*See also* 1987 Federal Tax Return Form 1120-PC, Schedule F, lines 6-9.

[5] We note that the statute in effect at the times relevant to this case was § 71.01(4)(a)4 and 5, STATS., 1985-86. This statute was repealed and renumbered by 1987 Wis. Act 312 and is

insurer to "add back" to its federal taxable income the interest and dividend deductions which it had taken for federal tax purposes. The statute provides in relevant part:

> (2) DETERMINATION OF NET INCOME. (a) Insurers subject to taxation under this chapter . . . shall pay a tax according to or measured by net income. Such tax is payable under s. 71.44(1). "Net income" of an insurer subject to taxation under this chapter means federal taxable income as determined in accordance with the provisions of the internal revenue code adjusted as follows:
>
> . . . .
>
> 3. By adding to federal taxable income an amount equal to interest income received or accrued during the taxable year to the extent such interest income was used as a deduction in determining federal taxable income.
>
> 4. By adding to federal taxable income an amount equal to dividend income received or accrued during the taxable year to the extent such dividend income was used as a deduction in determining federal taxable income . . . .

The issue in this case is what constitutes the correct amount of Heritage's "add back" under this statute. The Department contends that the proper amount of the "add back" was the full amount of the federal deduction as reported by Heritage in its original state returns. Heritage contends that the proper amount is 85% of the federal deduction pursuant to the Tax Reform Act.

---

substantially the same as § 71.45(2)(a)3 and 4, STATS., 1987-88. Both parties on appeal refer only to § 71.45(2)(a)3 and 4. To clarify, all citations to § 71.45 throughout the opinion refer to the 1987-88 version of the statute.

## FACTS

This matter comes to us on the basis of stipulated facts. Heritage is organized as a mutual insurance corporation under ch. 611 of the Wisconsin Statutes and is engaged in the business of selling property and casualty liability insurance in Wisconsin. Heritage filed its federal tax returns for the years in question, taking the allowable deductions for interest and dividends.[6] It also took its allowable deductions for losses incurred, reducing that amount by the 15% formula set out in the Tax Reform Act.

In its Wisconsin Franchise Income Tax Returns for the same years, Heritage added back 100% of the amounts it had taken as the interest and dividend deductions on its federal returns. Later, however, Heritage filed amended state returns, seeking refunds of $19,393 and $19,068 for the 1987 and 1988 years, respectively. Relying on the Tax Reform Act, Heritage's amended returns reduced the amount of "add backs" pursuant to the formula set out in the Tax Reform Act.

The Department of Revenue rejected Heritage's refund claims. Later, the Department also rejected Heritage's Petition for Redetermination. Heritage then sought and received a review of the Department's ruling before the Tax Appeals Commission.

In a decision dated March 31, 1995, the Commission reversed the Department's ruling. The Commission concluded that the language of § 71.45(2)(a)3 and 4, STATS., was clear and unambiguous. The Commission ruled that the "add back" for

---

[6] For 1987, Heritage's federally tax-exempt interest income was $4,703,878 and its allowable federal dividend deductions were $135,434. For 1988, the corresponding amounts were $4,705,280 and $114,212.

Wisconsin franchise tax purposes is "limited to the extent that such [dividend or interest] income was used as a deduction in determining federal taxable income." The Department sought and received judicial review in the circuit court. As noted, the court upheld the Commission's decision. The Department further appeals to us.

## DISCUSSION

### Standard of Review

We begin with our standard of review—a point on which the parties disagree. The Department contends that the effect of the Tax Reform Act of 1986 upon the computation of Wisconsin taxable income is a question of first impression for the Commission and therefore we should not pay deference to the Commission's determination. Heritage contends that the question is "very nearly" one of first impression requiring us to give the Commission's determination, if reasonable, great bearing or due weight.

The issue before us requires that we construe § 71.45(2), STATS. That presents a question of law which we ordinarily would review de novo. *See Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 244, 493 N.W.2d 68, 73 (1992). However, we accord varying degrees of deference to an administrative agency's interpretation of a statute which the agency has been legislatively charged to administer:

> First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." The second level of review is a mid-level standard that provides if the agency deci-

sion is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The third level of review is de novo and is applied when the case is clearly one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented.

*Id.* at 244-45, 493 N.W.2d at 73 (citations omitted).

██

This case involves a legal question intertwined with policy determinations. Because the Commission has primary responsibility for policy determinations, we conclude that the agency determination is properly accorded some degree of deference. *See Sauk County v. WERC*, 165 Wis. 2d 406, 413-14, 477 N.W.2d 267, 270 (1991). We say this while recognizing that the issue is one of first impression. Nonetheless, the issue invokes the agency's expertise and experience in construing the tax laws generally, and the interrelationship between the federal and state tax laws specifically. When this situation arises, *Wisconsin Dep't of Revenue v. Lake Wis. Country Club*, 123 Wis. 2d 239, 242-43, 365 N.W.2d 916, 918 (Ct. App. 1985), instructs that we give due weight and great bearing to the agency ruling.

This standard is complemented by the rule stated in *Nigbor v. DILHR*, 115 Wis. 2d 606, 611, 340 N.W.2d 918, 921 (Ct. App. 1983), *aff'd*, 120 Wis. 2d 375, 355 N.W.2d 532 (1984): "When reviewing an administrative agency's conclusions of law, the reviewing court is not bound by those conclusions but will sustain them if reasonable, even though an alternative view exists that is equally reasonable." *See also Lake Wis. Country Club*, 123 Wis. 2d at 242-43, 365 N.W.2d at 918.

We therefore will accord the Commission's ruling due weight and we will also inquire whether the ruling represents a reasonable construction of the statute.

*Construction and Application of § 71.45(2), Stats.*

■■

The resolution of this case turns on an interpretation of § 71.45(2), STATS. Our primary purpose when interpreting a statute is to give effect to the legislature's intent. *See Riverwood Park, Inc. v. Central Ready-Mixed Concrete, Inc.*, 195 Wis. 2d 821, 827, 536 N.W.2d 722, 724 (Ct. App. 1995). Our first resort is to the language of the statute, and where that language is plain on its face, we apply it to the facts; "we do not look beyond the plain and unambiguous language of a statute." *See Vogel v. Grant-Lafayette Elec. Coop.*, 195 Wis. 2d 198, 220, 536 N.W.2d 140, 149 (Ct. App. 1995), *rev'd on other grounds*, 201 Wis. 2d 416, 548 N.W.2d 829 (1996). If, however, the statute is ambiguous, we may examine the scope, history, context, subject matter and purpose of the statute. *See Riverwood Park*, 195 Wis. 2d at 828, 536 N.W.2d at 724. Furthermore, if an administrative agency has been charged with the statute's enforcement, we may also look to the agency's interpretation. *See UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 282, 548 N.W.2d 57, 60 (1996).

■■

Here, we agree with the Commission's conclusion that § 71.45(2)(a)3 and 4, STATS., is clear and unambiguous. Both as to the interest and the dividend deduction, the statute clearly instructs the insurer to compute its Wisconsin taxable income *by adding to federal taxable income an amount equal to interest/dividend income received to the extent such interest/dividend income was used as a deduction in determining the company's federal taxable income. See* § 71.45(2)(a)3 and 4. Here, pursuant to the Tax Reform Act, Heritage deducted the permitted 85% of its exempt interest and deductible dividends in determining its

federal taxable income. Pursuant to the clear language of the statute, Heritage was thus entitled to add back this same amount when determining its Wisconsin taxable income.

The Department argues that under the Tax Reform Act the interest and dividend deductions are not the deductions themselves. Rather, those items are used only as a measure to determine the allowable "losses incurred" deduction. The Department contends that the loss reserves deduction has no bearing on the computation of Wisconsin taxable income because the Wisconsin tax statutes "never required the add back of the federal deduction for federal loss reserves . . . in connection with the computation of Wisconsin net income."

However, even if the Department's grammatical parsing of the Tax Reform Act is correct, the argument overlooks the clear language of § 71.45(2)(a)3 and 4, STATS. The statute does not make the "computation/deduction" distinction which the Department perceives in the federal statute. Rather, the statute simply directs and allows the insurer to add back the amount of the federal deduction, regardless of how it was computed. This, of course, is precisely what Heritage did in its amended state returns.

The Department's argument also glosses over the interplay between the federal and state statutes. Section 71.45(2), STATS, is an "elastic" statute, operating in "lockstep" with the federal law. The amount of the deduction produced by the federal statute is the corresponding amount of the "add back" under the state statute. This is true whether amendments to the fed-

eral law expand or, as in this case, diminish the amount of the federal deduction.[7]

The Department further contends that allowing insurance companies to add back only 85% of their interest and dividend income will result in a windfall to insurance companies. The Department's concern stems from the fact that a portion of the tax-exempt loss reserves is funded with tax-exempt interest and dividend income. By reducing the loss reserves deduction by 15% of the interest and dividend income, the Tax Reform Act of 1986 prevented insurance companies from receiving a double deduction on that portion of its loss reserves which is funded with tax-exempt income.

We conclude that this court is not the proper forum for this argument. As we have noted, the legislature chose to write § 71.45(2), STATS., as an "elastic" statute which works in "lockstep" with federal tax law. Certainly the legislature knew that subsequent changes in federal law could alter an insurer's computation of Wisconsin taxable income under the state statute. If the Tax Reform Act has produced unacceptable or unanticipated tax benefits to property and casualty insurance companies, it is for the legislature, not us, to rewrite § 71.45(2).

In short, absent equal protection considerations or a statutory interpretation which produces an absurd or unreasonable result (neither of which is present here),

---

[7] Thus, we reject the Department's further argument that the Wisconsin Legislature's inaction subsequent to the Tax Reform Act of 1986 signals the legislature's intent that the add back required under prior federal law remained the required add back after the Reform Act. As we will note later in this opinion, the legislature has amended § 71.45, STATS., since the passage of the Tax Reform Act. *See infra* at 12. However, it has not tampered with the provisions at issue in this case.

our resolution of this case does not turn on whether a particular category of taxpayers receives favorable or unfavorable treatment.

Moreover, we note that § 71.45, STATS., has been amended several times since the passage of the Tax Reform Act of 1986. *See* § 71.45 (amended 1987, 1989, 1991, 1993). In doing so, the legislature is presumed to have acted with full knowledge of the Tax Reform Act. *See Glinski v. Sheldon*, 88 Wis. 2d 509, 519-20, 276 N.W.2d 815, 820 (1979). Yet, the legislature has not amended the statutory provisions at issue in this case.

## CONCLUSION

In many instances, the Wisconsin and federal taxation systems operate in lockstep. When changes in federal law produce a corresponding effect in Wisconsin tax procedures, it is for the legislature, not the courts, to consider whether such change represents good policy. Oftentimes, the legislature has responded to federal law by directing the taxpayer to deviate from the federal law. However, in this instance it has not. Unless and until it does, we properly follow the clear and unambiguous language of § 71.45(2), STATS. Accordingly, we affirm the circuit court's order upholding the decision of the Commission.[8]

*By the Court.*—Order affirmed.

---

[8] Because we find in favor of Heritage on the basis of the statutory language at issue, we do not address the equal protection arguments made by Heritage.