TRAVELERS INSURANCE COMPANY, Plaintiff-Respondent: CRUCIBLE STEEL CASTING COMPANY, Plaintiff-Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Defendants-Respondents: ROYAL GLOBE INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals, District IV

*No. 77-528. Argued August 23, 1978.—Decided October 9, 1978.*
(Also reported in 271 N.W.2d 152.)

---

[98] *Green v. State,* 75 Wis.2d 631, 642, 250 N.W.2d 305 (1977).
[99] *Ocanas v. State,* 70 Wis.2d 179, 185, 233 N.W.2d 457 (1975).
[100] *Id.*

For the appellants there was a brief by *Clayton R. Hahn* and *Borgelt, Powell, Peterson & Frauen, S.C.,* and oral argument by *Clayton R. Hahn,* of Milwaukee.

For respondent Travelers Insurance Company there was a brief by *Donald H. Carlson* and *Riordan, Crivello, Sullivan & Carlson,* and oral argument by *Donald H. Carlson,* of Milwaukee.

For Department of Industry, Labor & Human Relations the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Before Gartzke, P.J. Bablitch and Dykman, JJ.

GARTZKE, P.J.   This is an appeal from the judgment of the circuit court affirming a finding by the Department of Industry, Labor and Human Relations that claimant is totally permanently disabled and reversing the department's apportionment of liability between two

compensation insurers. We affirm the circuit court's judgment.

The issues are:

1. Is the department's finding that claimant is totally permanently disabled supported by credible evidence in the absence of testimony regarding his employment opportunities?

2. Should a finding of permanent disability be postponed until efforts to rehabilitate claimant have been exhausted?

3. Should the liability of a single employer for worker's compensation be apportioned between successive insurers where the employment during the period of coverage by each contributed to the disability?

4. Is the department's finding that 80% of claimant's disability is attributable to employment prior to July 1, 1972 and 20% to employment after that date supported by credible evidence?

Claimant was a chipper and grinder for Crucible Steel for about 15 years and then worked in its shipping department, performing manual labor, until January 2, 1973. He was exposed to dust, smoke and fumes throughout his employment and stopped work January 2, 1973 because of chest pains and breathing difficulties. He was born in 1926 and did not finish the fifth grade but is literate. He last drove a motor vehicle in 1960 or 1961 and does not have an operator's license. His working experience has been almost exclusively manual labor. He was a union "committeeman" from 1953 through January, 1973, and represented employees at Crucible Steel, including participation in negotiations and recommending language changes in the collective bargaining agreement. He is an alcoholic and suffers from hypertension and chronic bronchitis.

Claimant has silicosis caused by his employment. Dr. Kaufman, a specialist in pulmonary diseases, examined

claimant in 1973 and testified that claimant's pulmonary impairment is 50%. This prevents claimant from working where he will be exposed to fumes or dust and prevents him from doing work beyond his pulmonary ability, such as frequently lifting over 25 or 30 pounds. Taking into account his age, education and experience, claimant is 100% disabled, unless he is rehabilitated or obtains light work. The doctor does not know if light work is available and he doubts whether rehabilitation is possible in view of claimant's limited education.

Crucible Steel's worker's compensation insurer was Travelers from 1950 through June 30, 1972, and Royal-Globe from July 1, 1972, through January 2, 1973. In Dr. Kaufman's opinion, claimant's six months' exposure while employed at Crucible from July 1, 1972, to January 2, 1973, contributed 20% to claimant's disability and his employment before that date contributed 80%.

The department found that the claimant is totally permanently disabled and that 80% of his disability is attributable to his employment prior to July 1, 1972, and 20% is attributable to his employment after that date. The department apportioned the liability of Royal-Globe and Travelers accordingly. The circuit court affirmed the finding as to disability and reversed the findings and order as to apportionment. The circuit court held that Royal-Globe bears the entire liability.

Crucible Steel contends that the record lacks evidence that the employee is 100% disabled. It argues that the medical testimony established only that pulmonary impairment has disabled the employee to the extent of 50% of permanent total disability and that medical testimony must be confined to evaluation of permanent impairment and cannot extend to the social and economic effects of disability.

The department's determination of disability and its cause, extent and duration, is conclusive if supported by

credible evidence. *Transamerica Insurance Co. v. ILHR Department*, 54 Wis.2d 272, 276, 195 N.W.2d 656 (1972).

If evidence of the degree of physical disability and other factors such as mental capacity, education, training or age, establish *prima facie* that the employee will be unable to obtain regular and continuous employment and is therefore in the "odd-lot" category, see *Balczewski v. ILHR Department*, 76 Wis.2d 487, 251 N.W.2d 794 (1977), the burden is put upon the employer to show that suitable work is regularly and continuously available to the employee. It is not enough for the employer to show that the employee is physically able to perform light work without also showing that such work is available. *Balczewski, supra,* at 495, citing 2 *Larson Workmen's Compensation Law*, sec. 57.61.

The department was entitled to conclude that, in the absence of a showing to the contrary, a middle-aged manual laborer of limited education whose primary asset is a body afflicted with disabling silicosis and who also suffers from alcoholism, chronic bronchitis and hypertension, is unlikely to find regular and continuous employment. While an employment expert established the unavailability of such work for the employee in *Balczewski*, no expert was necessary for this claimant to make the required *prima facie* showing.

Credible evidence therefore exists for the department's finding that by reason of his lung condition, claimant can "perform no services other than those which are so limited in quality, dependability and quantity that a reasonably stable market for them does not exist."

The department may not compel an employee to take rehabilitation training without evidence that such training is an essential part of medical or surgical treatment. *Transamerica Insurance Co. v. ILHR Department, supra.*

The department made no findings regarding rehabilitation. We need not determine whether credible evidence would sustain a finding not made. *Unruh v. Industrial Commission,* 8 Wis.2d 394, 398, 99 N.W.2d 182 (1959).

The Worker's Compensation Act does not provide for apportionment of liability for occupational disease as between successive employers whose employment caused the disease or between the insurers of those successive employers or the successive insurers of a single employer whose employment caused the disease.

Sec. 102.01 (2) (f), Stats., provides, " 'Time of injury,' 'occurrence of injury,' or 'date of injury' means . . . in the case of disease the last day of work for the last employer whose employment caused disability. . ." Judicial construction of this provision has imposed the entire liability upon the last employer whose employment caused the disability resulting from the disease, without contribution from prior employers whose employment also caused the disease. The liability of each employer's insurer is determined in the same manner. If a single employer has had successive insurers, liability is imposed upon the insurer whose policy was in force at the time the disability occurred. See *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Commission,* 203 Wis. 135, 233 N.W. 772 (1930), *Outboard Motor Company v. Industrial Commission,* 206 Wis. 131, 239 N.W. 141 (1931), and cases cited in those opinions for the rule prior to the 1933 amendment of sec. 102.01 (2) (f) to its present form, and *Schaefer v. Industrial Commission,* 220 Wis. 289, 265 N.W. 390 (1936), *Jackson Monument Company v. Industrial Commission,* 220 Wis. 390, 265 N.W. 63 (1936), *Montello Granite Company v. Industrial Commission,* 227 Wis. 170, 278 N.W. 391 (1938), and *Northwestern A. & C. Co. v. Industrial Commission,* 21 Wis.2d 554, 124 N.W.2d 628 (1963), for post-1933 decisions.

This continues to be the law, unless Royal-Globe's view of recent cases is correct. Royal-Globe states that as our occupational disease law evolved, a wage loss or last day of work was essential to establish a "date of injury" and therefore to establish compensable disability as distinguished from a purely medical or pathological condition that did not impair earning capacity. *Green Bay Drop Forge Co. v. Industrial Commission,* 265 Wis. 38, 60 N.W.2d 409 (1953), permits an employee to establish a disability due to an occupational disease before termination of his employment. In *Kohler Co. v. ILHR Department,* 42 Wis.2d 396, 167 N.W.2d 431 (1969), a disability caused by occupational disease was held to be compensable without an actual loss of earnings. Royal-Globe contends that these modifications to the concept of disability require a change in the rule against apportionment among successive employers or insurers.

Royal-Globe asserts that the result in the *Green Bay Drop Forge* case depended upon the ability of the applicant to establish disability before termination of his employment. It contends that claimant in the case before us established pre-termination disability when Dr. Kaufman testified that "80 percent of the disability was present before July 1, 1972." Royal-Globe asserts that as a wage loss is no longer required for a disability under *Kohler Co. v. ILHR Department,* and

"since Dr. Kaufman testified to an ascertainable percentage of permanent disability existing on and before July 1, 1972, it is immaterial that Mr. Thompson did not sustain a wage loss at that time. His disability was established within the bounds of reasonable medical probability and the worker's compensation insurer on the risk at the time of 'first compensable disability' becomes the liability insurer."

We disagree with Royal-Globe's characterization of Dr. Kaufman's testimony. Dr. Kaufman testified that in

his opinion claimant's employment before July 1, 1972 "contributed to the major portion of his disability." He set that contribution at 80%. Dr. Kaufman said he had no idea whether claimant's silicosis before July 1, 1972 was disabling. We do not read Dr. Kaufman's testimony as being that claimant had a disability prior to July 1, 1972. We understand his testimony as being that claimant had silicosis prior to July 1, 1972 and 80% of the disability which arose *after* July 1, 1972 was caused by employment prior to that date. His testimony does not establish that claimant was disabled prior to July 1, 1972.

The court has construed sec. 102.01(2)(f) to mean that when disability occurs as a result of occupational disease after the relation of employer and employee has ended, the statute "decrees that such disability shall be compensated by the last employer whose employment caused disability." *Montello Granite Co. v. Industrial Commission,* 227 Wis. 170, 188, 189, 278 Wis. 391 (1938). Imposition of the entire liability upon the employer and the employer's insurer at the time disability occurs was ingrained in Wisconsin law prior to amendment of sec. 102.01(2)(f) to its present form in 1933. *Employers Mutual L. Ins. Co. v. McCormick,* 195 Wis. 410, 414–416, 217 N.W. 738 (1928), adopted the basic rule after considering protection of the rights of both the employer and employee, problems of notice and investigation of every slight ailment which might be the incipient stage of an occupational disease, and the fairness of imposing the entire burden upon one employer. The court said,

"The company that had insured the compensation liability at the time disability occurred is the one that must pay the compensation awarded. This rule will work no injustice to any individual carrier or employer because the law of averages will equalize burdens imposed by this act among the employers and the compensation insurers of this state."

This is the first reported attempt in many years to change the rule.[1]

The present rule arises out of a long-standing judicial construction of the Worker's Compensation Act. It survived Ch. 314, Laws of 1933, an amendment creating the present sec. 102.01(2)(f). *Montello Granite Co., supra.* The rule has become a part of the statute, and for this court to amend it would be judicial legislation. *Borello v. Industrial Commission,* 26 Wis.2d 62, 70, 71, 131 N.W.2d 847 (1964).

Further, this appeal involves only one method of apportioning liability for occupational disease: percentages of contribution to disability determined by medical opinion. Other methods have received recognition in other states. New York, for example, makes the last employer who employed the claimant under conditions contributing to the disease liable for the entire award, but that employer may request apportionment among previous employers whose employment contributed to the disability. Liability, in that event, is apportioned according to the time the employee was employed by each employer. Awards for silicosis are excluded. N.Y. Work. Comp. Law, sec. 44, sec. 44-a. (McKinney) California's recently revised Cal. Lab. Code, sec. 5500.5 (Deering), provides for joint and several liability of employers who employed the claimant under conditions contributing to disability during a period of four years prior to the "date of injury" or the last date of employment when claimant was exposed to the disease-causing hazard. By 1981, only employers who employed the claimant during the

---

[1] We are not confident that the parties were prepared to meet the issue of apportionment at the hearing. We have the impression that the medical witness on whose opinion the department relied had given apportionment no thought whatever prior to a request for his opinion on apportionment made by the examiner.

one year prior to the date of injury or last date of exposure will be held liable. The claimant may proceed against any of the successive employers. An employer held liable may seek apportionment or contribution. Michigan makes liable the last employer whose employment contributed to the disability but allows apportionment among all contributing employers who employed the claimant for at least six months within the ten years preceding the date of last exposure. Liability is in proportion to the time claimant was exposed to the hazard while in the employ of each employer. Mich. Comp. Laws Ann., sec. 417.9. Minnesota repealed its statute which made the last employer liable but allowed that employer to seek apportionment according to the period of service with each prior contributing employer. The element of exposure to which the employee was subjected to while working for each employer could be considered. Minn. Stats. Ann., Sec. 176.66 (5) repealed 1973 Minnesota Laws Ch. 643.

This court is not equipped to decide which apportionment method is best suited for silicosis or occupational diseases generally. Change, if appropriate, should come from the legislature.

As the judgment of the circuit court which reversed the apportionment by the department is affirmed, we do not determine whether the department's apportionment between the insurers is supported by credible evidence.

*By the Court.*—Judgment affirmed.