UNITED WISCONSIN INSURANCE COMPANY, Plaintiff-Appellant,

WISCONSIN PORCELAIN CO., INC., Plaintiff,

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Carla Vaquera and Regent Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 97–3776. Submitted on briefs January 5, 1999.—Decided July 20, 1999.*

(Also reported in 600 N.W.2d 186.)

417

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James G. Nowakowski* of *Halling & Cayo, S.C.* of Milwaukee.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle,* attorney general and *Stephen M. Sobota,* assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

WEDEMEYER, P.J.  United Wisconsin Insurance Company (United) appeals from a circuit court order affirming an order of the Labor and Industry Review Commission (LIRC), which affirmed an order of an Administrative Law Judge (ALJ).

United claims that LIRC erred as a matter of law in concluding that United was liable for medical expenses incurred by Carla Vaquera, the worker's compensation claimant, prior to the date of her occupational disease injury. Because in this context LIRC's interpretation of the Worker's Compensation Act, which requires payment of medical expenses incurred before the date of injury in occupational dis-

ease cases, is more reasonable than that of United's, we affirm.

## I. BACKGROUND

Vaquera worked for Wisconsin Porcelain Co., Inc. (Porcelain) in 1993 and 1994. She was an extruder operator, molding and shaping porcelain pipes. During March 1994, Vaquera began experiencing pain and numbness in her right hand. On May 19, 1994, she consulted her family physician, Dr. Natalie A. Owen, about the problem. Her condition was diagnosed as carpal tunnel syndrome, for which she received medication and a wrist splint. In a follow-up visit on July 14, 1994, Dr. Owen concluded Vaquera might also be experiencing some inflammation in the right hand and, to a lesser degree, similar symptoms in her left hand. Vaquera was referred for physical therapy. In a medical report dated November 7, 1994, Dr. Owen opined that Vaquera's right-hand carpal tunnel syndrome was a condition caused by an appreciable period of workplace exposure for which the workplace exposure was either the sole cause or a material contributory cause. On May 18, 1995, Dr. Jeffrey Welch, an orthopedic specialist, diagnosed Vaquera's condition as bilateral carpal tunnel syndrome and opined that the condition was work-related. At the behest of United, Dr. James White examined Vaquera on March 20, 1995, and rejected the diagnosis of work-related carpal tunnel syndrome. Vaquera did not miss a day of work due to her carpal tunnel condition until August 2, 1994.

Vaquera filed a hearing application with LIRC alleging that she sustained an occupational disease, carpal tunnel syndrome, arising out of her employment with Porcelain. She claimed compensation for lost wages and payment for medical expenses. She alleged

that her date of injury was March 25, 1994, the date
she first experienced carpal tunnel syndrome symp-
toms. Regent Insurance Company (Regent) and United
were joined as potentially liable worker's compensation
insurers. Regent provided coverage through April 30,
1994, and United provided coverage commencing May
1, 1994. Regent claimed it mistakenly made payments
for temporary total disability and temporary partial
disability. United made no payments of any nature.

After a hearing, the assigned ALJ concluded that
Vaquera sustained occupational carpal tunnel syn-
drome and that her date of injury was August 2, 1994,
the first day she lost time from work due to her medical
condition. The ALJ also found that United was liable
for compensation and medical expenses, including
those expenses incurred prior to August 2, 1994.
Because Regent had already paid some of Vaquera's
lost wages and medical expenses, the ALJ further
ordered United to reimburse Regent for the payments
it had made. United appealed this decision. As perti-
nent to this appeal, United claimed it was error to hold
that it was responsible for Vaquera's medical expenses
incurred prior to August 2, 1994. LIRC affirmed the
ALJ's decision. United's appeal from LIRC's decision to
the circuit court was of no avail. United again appeals.

## II. ANALYSIS

Succinctly put, this appeal challenges retroactive
liability for medical treatment incurred before the
legally designated date of injury in worker's compensa-
tion occupational disease cases. Section 102.01(2)(g),
STATS., defines "date of injury" in pertinent part as:
"[i]n the case of disease, the date of disability or, if that
date occurs after the cessation of all employment that
contributed to the disability, the last day of work for

the last employer whose employment caused disability."

United appeals claiming: (1) either LIRC's decision should be reviewed "*de novo*" or, if its decision is accorded "due weight" deference, United has provided a more reasonable interpretation of the law; and (2) section 102.42(1), STATS., does not require it to pay Vaquera's medical expenses incurred prior to her date of occupational disease injury. We shall examine these arguments in turn.

## STANDARD OF REVIEW

This court's scope of review, both as to the facts and the law, is the same as that of the circuit court. *See C.W. Transport, Inc. v. LIRC*, 128 Wis. 2d 520, 525, 383 N.W.2d 921, 923 (Ct. App. 1986). Our task is merely to determine whether LIRC's decision was correct. *See Langhus v. LIRC*, 206 Wis. 2d 494, 501–02, 557 N.W.2d 450, 454 (Ct. App. 1996). Here there is no challenge to the sufficiency of the record to support any of the evidentiary findings of fact made by LIRC regarding the compensatory injury of August 2, 1994. We therefore treat LIRC's evidentiary findings of fact as conclusive. "When the question on appeal is whether a statutory concept embraces a particular set of factual circumstances, the court is presented with mixed questions of fact and law." *Michels Pipeline Constr., Inc. v. LIRC*, 197 Wis. 2d 927, 931, 541 N.W.2d 241, 243 (Ct. App. 1995) (citation omitted). The actions of the parties present a question of fact but the meaning of the statute is a question of law. *See id.* Additionally, "the application of the statute to the facts is also a question of law." *Id.* The application of a statutory concept, however, to a set of facts frequently calls for a value judgment. *See id.*

When "the administrative agency's expertise is significant to the value judgment, the agency's decision is accorded some weight." *Id.* [1]

[1] The degree of weight to afford an agency's decision was recently addressed by this court in *Telemark Development, Inc. v. DOR*, 218 Wis. 2d 809, 581 N.W.2d 585 (Ct. App. 1998). We stated:

> Three levels of deference may be applied to the legal conclusions and statutory interpretations of administrative agencies. The highest—"great deference"—will be accorded an agency's decision when: (1) the agency is charged with the administration of the particular statute at issue; (2) its interpretation is one of long standing; (3) it employed its "expertise or specialized knowledge" in arriving at its interpretation; and (4) its interpretation will provide "uniformity and consistency in the application of the statute." "Where great deference is appropriate, the agency's interpretation will be sustained if it is reasonable—even if an alternative reading of the statute is more reasonable." We will also defer to an agency's interpretation " 'if it is intertwined with value and policy determinations' " inherent in the agency's decisionmaking function.
>
> The second level of deference—"due-weight" deference—is appropriate when the agency has some expertise in the area in question, but has not developed that expertise to the extent that would necessarily place it in a better position to make judgments concerning the interpretation of the statute than a court. Here, too, we will sustain the agency's interpretation if it is reasonable—even if another interpretation is equally reasonable. Unlike the situation where great deference is appropriate, however, due-weight deference will not permit sustaining the agency's interpretation if another interpretation is *more* reasonable.
>
> In cases at the third level, we consider the issues *de novo*, paying no deference at all to the agency's legal conclusions or statutory interpretations. These are cases where the issue before the agency is " 'clearly one of first impression,' " or where the agency's position on the issue has been so inconsistent as to provide " 'no real guidance.' " In that situation, " 'the weight to be afforded [the agency's] interpretation is no weight at all.' "

*Id.* at 817–19, 581 N.W.2d at 588–89 (citations omitted).

*A. Standard of Review.*

United first claims that no weight should be given to LIRC's decision because LIRC's position on retroactive liability for medical expenses in occupational disease cases has been "so inconsistent so as to provide no real guidance." *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 285, 548 N.W.2d 57, 62 (1996). The basis for this claim is the decision of LIRC in *Adams v. Cub Foods*, WC Claim No. 91–074342 (LIRC March 31, 1993), which United argues is "contrary to and diametrically opposite and irreconcilable" with LIRC's decision in the instant case. Therefore, United asserts, we must apply a "*de novo*" standard of review. We are not convinced.

Each worker's compensation case is governed by its own facts and circumstances. *See Glodowski v. Industrial Comm'n*, 11 Wis. 2d 525, 530, 105 N.W.2d 833, 836–37 (1960). Because of this principle, "the language of an opinion must be considered in connection with the particular facts involved. Applying language pertinent to one state of facts to a different state of facts is seldom warranted." *Vinograd v. Travelers Protective Ass'n*, 217 Wis. 316, 321, 258 N.W. 787, 789 (1935). Further, "[a] quotation from an opinion in a prior case is of no value as a precedent without a review of all of the facts and circumstances there present." *Bartell Broadcasters, Inc. v. Milwaukee Broad. Co.*, 13 Wis. 2d 165, 171, 108 N.W.2d 129, 132 (1961).

In accord with these principles, United's reliance on the *Adams* decision is misplaced because the instant case is distinguishable from *Adams*. In *Adams*, it was undisputed that the claimant had sustained a compensable occupational carpal tunnel syndrome injury and the only question was the liability of successive insurers. The claimant in *Adams* was assured full payment

of medical expenses from someone. In the instant case, the injured worker, Vaquera, faces the possibility of having to pay the medical expenses incurred prior to August 2, 1994, herself. Because the issue here is not the same issue decided in *Adams*, the *Adams* case is not dispositive and cannot form the basis for United's assertion that LIRC's decision in the instant case is "so inconsistent" with *Adams* that there is "no real guidance."

Further, the *Adams* case is not precedent here because an administrative agency is not governed by its prior determinations. *See Nick v. State Highway Comm'n,* 21 Wis. 2d 489, 495, 124 N.W.2d 574, 577 (1963).

In *UFE,* our supreme court made it clear:

> Due weight deference is appropriate when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court. The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question. Since in such situations the agency has had at least one opportunity to analyze the issue and formulate a position, a court will not overturn a reasonable agency decision that comports with the purpose of the statute ·unless the court determines that there is a more reasonable interpretation available.

*UFE,* 201 Wis. 2d at 286–87, 548 N.W.2d at 62. LIRC is charged with reviewing worker's compensation determinations under Chapter 102, STATS., and it has

expertise and specialized knowledge in the subject matter of the chapter. Furthermore, it cannot be disputed that LIRC has acquired a large amount of experience and knowledge in assessing the extent of liability of multiple employers and their insurers in occupational disease claims. *See North River Ins. Co. v. Manpower Temp. Servs.*, 212 Wis. 2d 63, 568 N.W.2d 15 (Ct. App. 1997); *Northwestern Insulation v. LIRC*, 147 Wis. 2d 72, 432 N.W.2d 620 (Ct. App. 1988); *Shelby Mut. Ins. Co. v. DILHR*, 109 Wis. 2d 655, 327 N.W.2d 178 (Ct. App. 1982); *Travelers Ins. Co. v. DILHR*, 85 Wis. 2d 776, 271 N.W.2d 152 (Ct. App. 1978) and *Employers' Mut. Liab. Ins. Co. v. McCormick*, 195 Wis. 410, 217 N.W. 738 (1928). Whether a new fact situation is presented for novel application is not critical. "[E]ven though an agency may never have interpreted a particular statute against facts of first impression, because the agency has prior experience in interpreting the statute, the agency's decision will be accorded due weight." *United States Paper Converters, Inc. v. LIRC*, 208 Wis. 2d 523, 528, 561 N.W.2d 756, 759 (Ct. App. 1997). Thus, LIRC's application and interpretation of § 102.42(1) STATS., should be upheld unless United has presented a more reasonable alternative. *See UFE*, 201 Wis. 2d at 288, 548 N.W.2d at 63.

*B. Application.*

Next, United contends that if its claim for "*de novo*" review is rejected and "due weight" deference is applied to LIRC's decision, its proffered position in regard to prospective liability only is a more reasonable interpretation of the law. We do not agree.

Fundamental to an analysis of any statutory interpretation is the ascertainment and advancement of the

legislative purpose. The Worker's Compensation Act was created to ensure that employees who have become injured or ill through their employment receive the prompt and comprehensive medical care that is necessary for their well being. *See Nigbor v. DILHR*, 120 Wis. 2d 375, 382, 355 N.W.2d 532, 536 (1984). Appellate courts of this state have repeatedly held that the Act should be construed liberally in order to fully effectuate this purpose. *See West Allis Sch. Dist. v. DILHR*, 116 Wis. 2d 410, 421, 342 N.W.2d 415, 421 (1984). The legislative history of the Act "suggests to us that over the years the legislature has mandated increasingly broad medical coverage to injured workers." *Lisney v. LIRC*, 171 Wis. 2d 499, 514, 493 N.W.2d 14, 19 (1992). With the elimination from § 102.42(1), STATS., of all time limitations for the payment of medical expenses,[2] employers are now "required to pay medical expenses that employees incur from work-related injuries, subject to the statute of limitations." *Id.* at 514, 493 N.W.2d at 20.

LIRC, in imposing liability on United for Vaquera's medical expenses incurred prior to August 2, 1994, agreed with the ALJ's reasoning:

> Respondent United Wisconsin Insurance asserts that it cannot be held liable for expenses occurring prior to [the] date of injury. . . . It is elementary that the conditions for liability for worker's compensation are a work-related injury, a date of injury and liability for medical expense and/or indemnity from that injury. While the date of an accidental injury is fixed by the incident unexpected and unforeseen that causes injury, in the case of occupational disease the date of injury is fixed by statutory

---

[2] *See* Laws of 1943, ch. 270, § 21.

definition and may occur after the onset of symptoms and treatment. To adopt the proposition that liability only exists prospectively would lead to an absurd result, specifically that workers legitimately injured in the course of employment and covered by worker's compensation could not receive compensation. Liability cannot exist against respondent Regent Insurance because no date of injury occurred while they were on the risk. While clearly treatment for an accidental injury cannot predate the accident which is the date of injury, in the case of an occupational disease such treatment can easily predate the technical date of injury in this matter. It is nevertheless a worker's compensation injury and liability rests upon the appropriate insurance carrier which is the insurance carrier on the risk as of the date of injury.

The result argued for by respondent United Wisconsin Insurance is particularly absurd because it would penalize workers suffering from legitimate occupational diseases to [sic] continue to work while undergoing treatment and require as a precondition for compensation that those workers stop working before any benefits can be collected. There is no statutory report [sic] for such a ridiculous proposition and it runs counter to the policy of encouraging injured workers to work to the best of their ability.

■

In response, United proposes two bases for what it claims is a more reasonable interpretation of the law than that offered by LIRC. First, citing *Adams*, it asserts that "by the consistent judgment of Wisconsin courts, which the Wisconsin Legislature has not disputed in numerous legislative amendments to Chapter 102 of the Statutes, the costs for such treatment are not attributable to 'occupational disease' as defined in Chapter 102." United argues this statement is a pre-

ferred rationale with historical support. We reject this argument for two reasons: (1) this conclusory statement is barren of any citations from the statute itself, nor is the argument developed by reference to any case law, *see Estate of Balkus*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985); and (2) § 102.42(1), STATS., refutes the proposition[3] by providing for such costs. Therefore, we reject United's argument because it is relying on a statement in a previous unreported LIRC decision that is not supported by the case law or the statute.

Second, United contends that because an employer and worker's compensation insurer cannot be liable for indemnity compensation unless there is a date of injury, it logically follows that it cannot be liable for medical expenses incurred prior to a date of injury. This logic is faulty and United's second argument fails.

In developing the rationale for the decision substantially adopted by LIRC, the ALJ noted that, unlike an accidental injury where the date of injury is determined by the incident itself, an occupational disease date of injury is fixed by statutory definition, and may occur after the onset of symptoms and treatment. The ALJ further recognized that treatment for an injury of occupational origin can readily precede the statutorily

---

[3] Section 102.42(1), STATS., in pertinent part reads:

The employer shall also be liable for reasonable expense incurred by the employe for necessary treatment to cure and relieve the employe from the effects of occupational disease prior to the time that the employe knew or should have known the nature of his or her disability and its relation to employment . . . . The obligation to furnish such treatment . . . shall continue as required to prevent further deterioration in the condition of the employe or to maintain the existing status of such condition whether or not healing is completed.

defined date of injury. The ALJ also recognized that liability rests upon the insurance carrier "on the risk as of the date of injury." In other words, liability does not attach until a date of injury is established because the date of injury determines which insurer is responsible for all compensable payments. Lastly, the ALJ pointed to the absurdity of only recognizing post-date of injury expenses because it would encourage both unwarranted and premature absence from the workplace and "penalize workers suffering from legitimate occupational diseases to continue to work while undergoing treatment." From this analysis, we conclude that LIRC's interpretation and application of the statute does more to meet the purposes of the Worker's Compensation Act as liberally construed and, consequently, is more reasonable than the theory espoused by United.

Finally, United contends that § 102.42(1), STATS., does not require it to pay Vaquera's medical expenses incurred prior to her date of occupational disease injury. United's argument in support of this contention is three-fold: (1) the section and its interpretation do not expressly or impliedly state an employer is liable for medical treatment expenses incurred prior to the date of the occupational disease injury; (2) the section and its interpretation assume there has been a disability and, therefore, a date of injury, preceding the medical treatment and expense; and (3) the section and interpretation deal with liability for medical expenses prior to an employee giving notice of occupational disease injury. We are unconvinced.

The pertinent portion of § 102.42(1), STATS., is quite direct and explicit. Regarding the treatment of an employee, the employer is liable for the reasonable expenses incurred by the employee for the necessary

treatment to cure and relieve the effects of occupational disease prior to the time the employee knew or should have known the nature of the disability and its relationship to employment.

The language of the statute provides that the time of knowledge, on the part of the employee, of the nature of the occupational disease and its relationship to employment, or imputed knowledge of the same, triggers *ex post facto* liability for medical expenses. There is no language in the statute referring to a technical date of injury nor any language from which such an inference could reasonably be drawn. Nor are there any words even remotely suggesting post-date of injury limitations.

■

Further, we conclude that §§ 102.01(2)(g), and 102.42(1), STATS., are not inconsistent with one another. Section 102.01(2)(g) sets the date of injury in occupational disease cases. Section 102.42(1) provides that medical expenses incurred before an employee knows that he or she is experiencing a work-related injury are compensable. In reading these statutes together, the only reasonable interpretation is that medical expenses in occupational disease cases are not compensable until the date of injury. But, once a date of injury is established, any medical expenses associated with the work-related injury, even if incurred before the technical date of injury, are compensable. To conclude otherwise would lead to inconsistent results. In sum, we conclude that United's last contention is without merit.

*By the Court.*—Order affirmed.

SCHUDSON, J. *(concurring)*. Although I agree with "the bottom line" of affirmance, I disagree with the analysis that precedes it. I write separately, therefore, to attempt to clarify what should have been the basis for resolution of this appeal, and to oppose publication of an opinion that will confuse and mislead LIRC, lawyers, and courts.

The majority opinion is confusing and misleading in many respects, and the confusion could have been so easily avoided. The Attorney General offers an organized and persuasive brief providing the sound and straightforward basis for decision:

(1) Section 102.42(1), STATS., governs. It establishes an employer's liability "for reasonable expense incurred by the employe[e] for necessary treatment to cure and relieve the employe[e] from the effects of occupational disease prior to the time that the employe[e] knew or should have known the nature of his or her disability and its relation to employment." Although the statute does not absolutely and explicitly dictate the "date of injury" determination, the Attorney General's interpretation and application of the statute to the facts of this case are *reasonable*.

(2) United's position is *unreasonable*. "It would lead," in the Attorney General's words, "to the unintended and unreasonable result of requiring an occupational disease sufferer, who wishes to continue working, to step away from his or her scheduled work duties, thereby creating a 'date of injury,' in order to get medical expenses paid under the compensation act."

(3) Under settled standards, *whenever reasonably possible*, worker's compensation statutes are to be liberally construed in favor of the right to compensation. *See State v. LIRC*, 136 Wis. 2d 281, 288, 401 N.W.2d 585, 588 (1987). It is most *reasonable* to read

431

§ 102.42(1), STATS., to provide for compensation in this case.

Unfortunately, once again, I find myself in the unenviable position of having to warn against publication of what should have emerged as a clear, valuable, and publishable statement of law. I do so knowing full well that, for some, such criticism might seem to reflect negatively on this court and even embarrass my colleagues and myself. Certainly, I do not intend that, and I regret that some may choose to misunderstand my words and misconceive my motives.

I write without rancor. I do write critically, however, and as carefully as I can, for what I hope are reasons good and true. And I do so only after searching for and attempting every possible alternative I know—to cultivate consensus, and to motivate the careful and collegial preparation of opinions. As tempting as it is to "sign off" on unsatisfactory opinions and, frankly, as often as I have succumbed to such temptation, I must, at the very least, try not to do so on opinions recommended for publication—opinions, which, if published, guide the bench and bar, and the people we serve.

Accordingly, I respectfully concur.