E. C. Styberg Engineering Company, Inc. and
Combined Specialty Insurance Co., c/o Cambridge
Integrated Services Group, Plaintiffs-Appellants,†

v.

Labor and Industry Review Commission and
Richard Hetchler, Defendants-Respondents.

Court of Appeals

*No. 04–1039. Submitted on briefs November 10, 2004.—Decided
December 22, 2004.*

2005 WI App 20

(Also reported in 692 N.W.2d 322.)

† Petition to review denied 5-11-2005.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Joseph P. Danas, Jr.* and *Patrick D. McNally* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Lowell E. Nass*, assistant attorney general.

On behalf of the defendant-respondent Richard Hetchler, the cause was submitted on the brief of *Thomas W. Durkin* of *Becker, French & DeMatthew* of Racine.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J. In this case, an employer and its insurance company challenge the Labor and Industry Review Commission's determination that an employee who sustained a knee injury while playing softball during a paid break period deserved worker's compensation benefits. We reject the challenge. The factual scenario in this case may be one of first impression, but LIRC had to make a value judgment about what constituted employment and its incidents in making its determination. Because LIRC employed its special expertise in making this value judgment, we accord its

decision great weight deference. We hold that the agency made its decision based on reason. The employee's activity was a momentary and insubstantial departure from his duties, so the result LIRC reached is consistent with prevailing case law. The major case the respondents cite in support of their proposition that LIRC acted improperly is factually distinguishable and, at least arguably, was overruled by later case law. Accordingly, there was nothing improper about LIRC's inherently value-laden decision to adopt a rule from Professor Larson's treatise on worker's compensation. We affirm.

¶ 2. In 1998, Richard Hetchler began his employment at E.C. Styberg Engineering Company, Inc. He worked in Styberg's service department as a material handler, and his work involved operating a forklift and shipping duties, such as checking parts for rust and packing them. His normal workday included three break periods, including one twenty-minute, paid break that began at 11:55 a.m.

¶ 3. In the early months of 2000, Styberg implemented a nonsmoking policy. Employees could no longer smoke on Styberg's premises during their breaks. Otherwise, Styberg's employees could do as they wished on the paid breaks.

¶ 4. At the beginning of May, the weather became fair enough to spend the break outdoors. Styberg set up a basketball hoop and posted a notice on a bulletin board for work-related announcements that the hoop was available for employees to use during their break periods. Beginning at that time, employees, including Hetchler, frequently played basketball while on break with no objections from Styberg.

¶ 5. Employees also began regularly to play softball on their breaks "when the weather broke nice." They provided the softball equipment themselves and

played in the area of the basketball hoop. Hetchler joined in these games on two occasions, once on May 25, during his 11:55 break, and once prior to that date. On the May 25 occasion, Hetchler slipped while swinging the bat and fell to the ground, sustaining a patellar dislocation of his right knee.

¶ 6. Hetchler missed eight weeks and five days of work as a result of his injury. When he returned, the basketball hoop was gone. He learned that Styberg no longer permitted sports of any kind on its premises during the break periods.

¶ 7. On August 20, 2002, Hetchler appeared at a worker's compensation hearing before an administrative law judge (ALJ) at the Worker's Compensation Division of the Department of Workforce Development, where he sought a finding of compensability for his injuries. He also sought temporary total disability benefits from May 26, 2000 to July 21, 2000 and four additional days in August, four percent partial disability to the right knee, and the payment or reimbursement of more than $4700 in medical expenses. Hetchler argued that at the time of his injury, he was performing service growing out of and incidental to his employment at Styberg and that the injury arose from his employment.

¶ 8. Hetchler based his argument that he was engaged in service to Styberg on *Bruns Volkswagen, Inc. v. DILHR*, 110 Wis. 2d 319, 328 N.W.2d 886 (Ct. App. 1982), and *Nigbor v. DILHR*, 120 Wis. 2d 375, 355 N.W.2d 532 (1984). According to Hetchler, both cases stood for the proposition that momentary, insubstantial deviations from employment duties did not take the employee's conduct out of the scope of employment and employed a four-part test for determining the substantiality of a deviation. Hetchler contended that like the employee in *Bruns Volkswagen, Inc.*, who got hurt

while wrestling with another employee, he became injured while engaged in horseplay that was of short duration, impulsive, and which occurred during a natural lull in service for the employer.

¶ 9.　Hetchler also concluded that his injury arose out of his employment because he was on Styberg's premises and Styberg had set up the basketball hoop and encouraged employees to use it. He concluded that in doing so, Styberg had thereby encouraged employees to play sports on company property during their breaks. Thus,

> As succinctly stated in [*Village of Butler v. Industrial Commission*, 265 Wis. 380, 385, 61 N.W.2d 490 (1953)], "all that is required is that the obligations or conditions of employment create the 'zone of special danger' out of which the injury arose." Clearly, the obligations or conditions [of] Hetchler's employment created the "zone of danger" out of which his injury arose.

¶ 10.　Styberg countered as follows:　Hetchler was engaged in recreational activity when he sustained his injuries, not horseplay. It maintained that although *Bruns Volkswagen, Inc.* departed from *State Young Men's Christian Ass'n v. Industrial Commission*, 235 Wis. 161, 292 N.W. 324 (1940) (hereafter *YMCA*) (reversing an award of compensation to an on-call, off-duty medical student employee who sustained an eye injury while playing tennis on camp recreational facilities), in the realm of *horseplay* in the workplace, horseplay and recreational activity were distinguishable. Styberg maintained that *YMCA* was still the lead case for injuries resulting from recreational activity. It quoted the following language from *YMCA*:

> In determining whether an injury suffered while playing a game is to be compensated, the deciding factor

must be found in facts showing the act to have been performed for the exclusive benefit of the employee so as to be a personal privilege or an act which the employer permits the employee to undertake for some cause apart from the employer's own interests.

*Id.* at 163.

This excludes injuries sustained when off duty and while the relation of employment does not operate upon [the employee] by requiring him [or her] to do anything or be in a particular place. He [or she] then conducts himself [or herself] according to his [or her] own wishes, sets the stage himself [or herself], and controls the elements that constitute the hazard. Where there is no evidence that at the time the injury was received the claimant was engaged in any work for his [or her] employer, a finding is not warranted that the injury arose out of and in the course of his [or her] employment.

*Id.* at 165–66 (citation omitted). Styberg concluded that because Hetchler was free to do as he wished on his break and his participation in a softball game conferred no benefit on Styberg, this case was analogous to *YMCA.*

¶ 11. The ALJ issued a decision on November 4, 2002, favoring Styberg and its insurance carrier, Combined Specialty Insurance Co. The decision accepted Styberg's position that *Bruns Volkswagen, Inc.* and *Nigbor* were horseplay cases and hence not on point. Instead it relied upon language in *Schwab v. DILHR,* 40 Wis. 2d 686, 162 N.W.2d 548 (1968) (a post-*YMCA* case), that social and recreational activities do not come within the course of one's employment simply because the employer receives some benefit in the form of increased employee morale and efficiency. The ALJ quoted the portion of the *Schwab* court's opinion that

adopted Professor Larson's treatise on worker's compensation:[1]

> "Controversy is encountered also when the benefit asserted is the intangible value of increased worker efficiency and morale. Basically, the trouble with this argument is not that such benefits do not result, but that they result from every game the employee plays whether connected with his [or her] work or not. In this respect, the argument is reminiscent of the same view sometimes heard in connection with the personal comfort cases: eating, resting, and the like do indeed improve the efficiency of the employee, but this is equally true (and even more true) of the sleeping and eating which he [or she] does at home. And so, just as in the sleeping and eating cases some arbitrary time and space limitations must circumscribe the area within which the 'benefit' establishes work-connection, the recreation cases must submit to some similar limitation, since otherwise there is no stopping point which can be defined short of complete coverage of all the employee's refreshing social and recreational activities. It can be taken as the distinctly majority view that these morale and efficiency benefits are not alone enough to bring recreation within the course of employment."

*See Schwab*, 40 Wis. 2d at 692 (footnote omitted).

¶ 12. Hetchler filed a timely petition for review, and LIRC issued a decision on August 28, 2003 reversing the ALJ. It cited our decision in *Bruns Volkswagen,*

---

[1] *Schwab v. DILHR*, 40 Wis. 2d 686, 692 n.4, 162 N.W.2d 548 (1968) cites, "1 Larson, *Law of Workmen's Compensation*, p. 375, sec. 22.30" as the source of this quoted language. We note that the language, with few minor exceptions, is identical to that in the latest version of Professor Larson's treatise. *See* ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 22.05[3] at 22–35–22–36 (2004).

*Inc.*, in which we concluded that our supreme court implicitly overruled *YMCA*, at least

> to the extent that it implied that *any deviation* to "exercis[e] a personal privilege apart from any interest of the employer, the nature of which cannot be considered as being for the benefit of the employer . . . [does] not arise out of and in the course of employment."

*See Bruns Volkswagen, Inc.*, 110 Wis. 2d at 323–24. LIRC noted that in *Bruns Volkswagen, Inc.* we instead followed the "momentary deviation" test that the supreme court announced in *Maahs v. Industrial Commission*, 25 Wis. 2d 240, 130 N.W.2d 845 (1964), which permitted payment of compensation in "curiosity cases."[2] LIRC's opinion pointed out that the supreme court agreed with *Bruns Volkswagen, Inc.*'s extension of *Maahs* when it decided *Nigbor*, 120 Wis. 2d at 384 ("[We] moved away from the harsh rule that *any* deviation from employment would prevent an award of benefits and adopted the rule that an impulsive, momentary, and insubstantial deviation will not bar recovery." (Citation omitted; quoted by LIRC)).[3] LIRC pointed out that both *Bruns Volkswagen, Inc.* and *Nigbor* relied on Professor Larson's treatise for this rule.

¶ 13. LIRC also observed that the courts have sometimes allowed compensation for injuries employ-

---

[2] In *Maahs v. Industrial Commission*, 25 Wis. 2d 240, 130 N.W.2d 845 (1964), the employee had momentarily deviated from his duties to satisfy an idle curiosity.

[3] LIRC also factually distinguished *Schwab* and *State Young Men's Christian Ass'n v. Industrial Commission*, 235 Wis. 161, 292 N.W. 324 (1940). It observed that in *YMCA* the employee was on call, not on a twenty-minute paid break, and in *Schwab*, the injury was from off-duty, off-premises activity, namely, driving home from a supervisory social gathering to which the employee's personnel manager had invited him.

ees incur while on break. It noted the personal comfort doctrine, which employs a similar rule to that in *Bruns Volkswagen, Inc.* and *Nigbor,* when employees are on smoking, restroom, and coffee breaks. LIRC mentioned that *Marmolejo v. DILHR,*[4] 92 Wis. 2d 674, 680, 285 N.W.2d 650 (1979), adopted this rule from Professor Larson's treatise.

¶ 14. Having observed that *Schwab, Marmolejo, Bruns Volkswagen, Inc.,* and *Nigbor* adopted rules from the Larson treatise, LIRC elected, in light of that fact, to follow § 22.03 of ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW (2004), which established a rule for injuries incurred from recreational activities on the employer's premises during lunch and break periods. LIRC summarized LARSON & LARSON as follows. First, most such injuries are compensable. *See id.* § 22.03[1], at 22–5. Second, there are three alternative conditions that can satisfy the "within the course of employment test," the one relevant to this case being whether the activity has gone on long enough for a reasonable employer to become aware of the activity. *See id.* §§ 22.01, 22.03[2], at 22–8-22–9. Third, therefore, recreational activities are within the course of employment when they have gone on long enough to become an incident of employment. *See id.* § 22.01, at 22–2.

¶ 15. Applying this treatise rule to the instant case, LIRC determined that compensation was appropriate. First, Styberg had put up the basketball hoop on

---

[4] In *Marmolejo v. DILHR,* 92 Wis. 2d 674, 680, 285 N.W.2d 650 (1979), the supreme court stated, "Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred . . . ." (Quoted by LIRC).

its premises and invited employees to use it. Second, credible testimony in the record established that after this time workers frequently played basketball and softball. LIRC concluded that based on its affirmative actions with regard to the hoop, Styberg should have become aware by the time of Hetchler's injury that employees were playing sports during their breaks.

¶ 16. Styberg and Combined Specialty sought review in the Racine County Circuit Court. On February 27, 2004, the circuit court upheld LIRC's decision and dismissed the complaint. It determined that the administrative decision was entitled to great deference. It further concluded that LIRC's conclusions, which were based on its application of Professor Larson's treatise views, were reasonable. Styberg and Combined Specialty now appeal.

¶ 17. We first turn to the proper standard of review. We note that the conduct of Hetchler and Styberg involves factual determinations. *See Ide v. LIRC*, 224 Wis. 2d 159, 164, 589 N.W.2d 363 (1999). LIRC's findings of fact are conclusive so long as credible and substantial evidence exists to support them. *Id.* at 165; WIS. STAT. § 102.23(1) and (6) (2001–02).[5] With respect to weight and credibility determinations, this court will not substitute its determination for that of LIRC. *Ide*, 224 Wis. 2d at 165; § 102.23(6). Our role involves the narrow task of searching the record for evidence that would support LIRC's findings. *Ide*, 224 Wis. 2d at 165.

[5] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

We review LIRC's decision, not that of the circuit court. *Honthaners Rests., Inc. v. LIRC*, 2000 WI App 273, ¶ 8, 240 Wis. 2d 234, 621 N.W.2d 660.

¶ 18. As to LIRC's application of statutory concepts to the facts of this case, it matters little whether we characterize them as questions of fact or law. *See Nigbor,* 120 Wis. 2d at 383. In *Nigbor,* the supreme court stated that when the agency's determination calls for a value judgment and the agency employs significant expertise in reaching that determination, the courts give weight to that decision. *Id.* at 383–84. We will defer to the agency's conclusions so long as they are reasonable, even if we might have decided differently. *Id.* at 384.

¶ 19. The *Nigbor* standard of review clearly applies here. In that case, the supreme court specifically acknowledged that "[LIRC] has developed significant expertise in determining when an employee is acting within the scope of his [or her] employment . . . ." *Id.* Significantly, *Nigbor* involved the interpretation of the same provisions relevant in this case, namely, WIS. STAT. § 102.03(1)(c) and (e). *See Nigbor,* 120 Wis. 2d at 382–83. Moreover, determining whether an employee "is performing service growing out of and incidental to his or her employment," § 102.03(1)(c), and whether "the accident . . . causing injury arises out of the employee's employment," § 102.03(1)(e), involves a value judgment as to what constitutes employment and its incidents.

¶ 20. Styberg and Combined Specialty cite two cases in support of their argument that great weight deference is inappropriate and in favor of de novo review: *Honthaners Restaurants, Inc. v. LIRC,* 2000 WI App 273, 240 Wis. 2d 234, 621 N.W.2d 660, and *Beecher v. LIRC,* 2004 WI 88, 273 Wis. 2d 136, 682 N.W.2d 29, *reconsideration denied,* 2004 WI 131, 276 Wis. 2d 32, 689 N.W.2d 59 (Wis. Oct. 29, 2004) (No. 02–1582). They

552

cite *Honthaners Rests., Inc.* for the proposition that while great weight deference is appropriate when the four conditions set forth in *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995), are present, two of them are absent here.[6] First, the respondents contend that LIRC's interpretation is not one of long standing. They state that LIRC "cannot assert that it has any level of expertise in determining the compensability under [Wis. Stat. ch. 102] of an employee's injury while engaging in a recreational activity on the employer's premises while on a break from his [or her] duties" because it has not applied or interpreted *YMCA* since our supreme court decided the case. Second, they argue that because LIRC did not follow *YMCA's* rule that an employee's injuries are noncompensable when the employee engages in a recreational activity for his or her own purposes, in violation of stare decisis, LIRC's decision does not provide for uniform and consistent application of the law.

¶ 21. We reject both arguments. With respect to the respondents' argument that LIRC's interpretation here is not one of long standing, *Honthaners Rests., Inc.* makes clear that it is irrelevant whether LIRC has previously considered similar factual situations. *Honthaners Rests., Inc.*, 240 Wis. 2d 234, ¶ 12. Therefore, it does not matter whether LIRC has

---

[6] The four conditions are as follows: (1) the legislature has charged the agency with the administration of the statute; (2) the agency's interpretation is one of long standing; (3) in reaching its interpretation of the statute, the agency employed its expertise and specialized knowledge; and (4) the agency's decision will provide for uniform and consistent application of the statute. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995).

considered any cases since *YMCA* involving injuries arising out of on-premises, on-break recreational activity. The relevant inquiry is whether LIRC "has experience in interpreting a particular *statutory scheme.*" *Honthaners Restaurants, Inc.,* 240 Wis. 2d 234, ¶ 12 (emphasis added). As we stated above, our supreme court in *Nigbor* determined that it does, at least with respect to the provisions relevant to the instant appeal.

¶ 22. We also conclude that LIRC's decision introduces no inconsistency into the law. First, LIRC's decision to apply the treatise rule is entirely consistent with *Nigbor.* Engaging in sporting activity during a twenty-minute, paid break can be a momentary and insubstantial deviation from employment. Moreover, while we do not purport to decide whether it is appropriate to extend *Nigbor* to other factual situations not before us, we do observe that *Nigbor's* "momentary deviation" test potentially explains the results in many of the worker's compensation cases we cited above. We cite *Schwab* as a particularly useful example because it was a post-*YMCA*, pre-*Bruns Volkswagen, Inc.* case. The injury in *Schwab* occurred hours after the workday had ended while the injured employee drove home from a work-related social event. *See Schwab,* 40 Wis. 2d at 687–88. Arguably, his drive was not a momentary, impulsive, and insubstantial deviation from work activity. Indeed, he was finished with work for the night. Even *YMCA* itself is fairly explainable based on the *Nigbor* test. One could easily conclude that being off duty, rather than merely on a short break as in the instant case, was not a *momentary* and *insubstantial* deviation from employment.

¶ 23. Alternatively, there is a strong argument that *YMCA* is no longer good law. We stated as much in *Bruns Volkswagen, Inc.,* and the supreme court cited

our decision's interpretation of *Maahs* with approval in *Nigbor* when it stated that the courts have moved away from the harsh rule that all deviations from employment preclude recovery of worker's compensation benefits. *See Bruns Volkswagen, Inc.*, 110 Wis. 2d at 323–24; *Nigbor*, 120 Wis. 2d at 384. Although Styberg and Combined Specialty continue to distinguish these precedents as "horseplay cases," *Bruns Volkswagen, Inc.* does not support such a distinction. Indeed, adopting for one moment the respondents' classification of the various cases, *Maahs* was a "curiosity case," not a "recreational activity" case. Thus, we could not have concluded that *Maahs* and *YMCA* were inconsistent with one another had we deemed such distinctions legally significant. *See Bruns Volkswagen, Inc.*, 110 Wis. 2d at 324.

¶ 24. We further reject the respondents' assertion that *Beecher* requires us to review this case de novo. They state that *Beecher* requires independent review when LIRC has interpreted an appellate decision. Here, as in *Beecher*, they claim that instead of interpreting the relevant statutes or any administrative rule, LIRC based its decision on its interpretation of case law and the Larson treatise, specifically LARSON & LARSON, *supra,* at §§ 22.01 and 22.03.

¶ 25. We disagree that *Beecher* is on point. In *Beecher*, LIRC relied on a section of the Larson treatise to modify case law, and its resulting interpretation of the relevant precedent disposed of the case. *See Beecher*, 273 Wis. 2d 136, ¶¶ 24, 26, 26 n.7. Here, LIRC simply concluded that *YMCA* did not control this case.[7]

---

[7] If we assume *Bruns Volkswagen, Inc.*, 110 Wis. 2d 319, 328 N.W.2d 886 (Ct. App. 1982), was correct in its assumption that *Maahs* implicitly overruled *YMCA*, then *YMCA* was no longer

It then asked "whether it [was] reasonable to follow
Professor Larson's lead on the issue" to determine

good law even before we decided *Bruns Volkswagen, Inc.* Thus,
*Bruns Volkswagen, Inc.* is significant not for the abrogation of
the *YMCA* rule but for filling the void left by *Maahs*, i.e.,
determining what new rule should apply to the fact situation
before the court. LIRC was faced with the same task here of
deciding what new rule ought to apply in the present factual
context.

Therefore, we disagree with the respondents' statement
that "if [the distinction between horseplay, curiosity, and recre-
ational activity cases] was 'merely a convenient way to label the
facts of the case' as Hetchler attempts to argue . . . then there
would have been no reason whatsoever for the Court of Appeals
in *Bruns* to even address, in a published decision, the issue of
whether Wisconsin should extend the adoption of the Larson
treatise view on curiosity cases to horseplay cases." It is well
known that each worker's compensation case is "governed by its
*own facts and circumstances." See United Wisconsin Ins. Co. v.
LIRC*, 229 Wis. 2d 416, 423, 600 N.W.2d 186 (Ct. App. 1999)
(emphasis added).

> Because of this principle, "the language of an opinion must be
> considered in connection with the particular facts involved. Apply-
> ing language pertinent to one state of facts to a different state of
> facts is seldom warranted." Further, "[a] quotation from an opinion
> in a prior case is of no value as a precedent without a review of all
> of the facts and circumstances there present."

*Id.* (citations omitted; alteration in original). Thus, just because
*Bruns Volkswagen, Inc.* concluded that *Maahs* implicitly over-
ruled *YMCA* does not necessarily mean that the court was
obligated to adopt the new standard the supreme court em-
ployed in *Maahs*. Deviating from one's duty to satisfy an idle
curiosity is factually distinct from wrestling with a colleague
during a lull in activity.

Moreover, even if we assume that *YMCA* was not overruled
but merely distinguishable on its facts, the language in *United
Wisconsin Insurance Co.* belies the respondents' argument that

whether that rule should apply instead. It looked to appellate case law merely to support its value judgment that such a course was proper. Although its decision to follow the treatise rule must be reasonable, it was nonetheless a value judgment, and the *Nigbor* standard of review therefore applies.

¶ 26. Having determined the appropriate standards of review, we now examine LIRC's decision. We note first that Styberg and Combined Specialty contest the agency's findings of fact. Specifically, they assert that LIRC erred when it found that Styberg employees had been playing softball since early May. Despite the fact that Hetchler answered affirmatively when asked whether employees had been playing basketball and softball frequently on their breaks, the respondents claim that the question was ambiguous. Moreover, they contend that this answer was not credible evidence in light of the following exchange between Hetchler and his counsel:

Q: And this is the first time that you had played softball?

A: No, like the second time I said—we were there.

The respondents interpret this exchange as an admission by Hetchler that the employees had only played softball once prior to Hetchler's injuries.

¶ 27. We disagree. Even if Hetchler's affirmative answer was ambiguous, the exchange the respondents rely upon is equally ambiguous. "[F]irst time that *you*

---

*Bruns Volkswagen, Inc.* would not have merited publication without a legal distinction between curiosity, horseplay, and recreational activity cases.

had played softball" could easily have referred to Hetchler individually. Such an interpretation would be entirely reasonable in light of the question immediately preceding it, namely, "In playing softball *you* were playing with other employees?" Thus, the respondents cannot rely on the exchange they cite to "clarify" the other testimony. Indeed, the equally plausible alternative reading constitutes substantial and credible evidence in *support* of LIRC's findings.

¶ 28. We also disagree with the respondents' assertion that LIRC erred in finding that softball had become a regular incident of employment at Styberg pursuant to the treatise rule—i.e., recreational activity becomes an incident of employment when it has persisted long enough for a reasonable employer to become aware of it, LARSON & LARSON, *supra,* § 22.03[2], at 22–8-22–9. Despite what respondents imply, the agency did not find Styberg liable for every conceivable type of sporting activity that might potentially occur on its premises merely because it put up a basketball hoop. Rather, it inferred that because Styberg affirmatively encouraged some sporting activity on its premises, this action *hastened* the point at which it should have discovered the employees' frequent softball games. Again, LIRC placed special emphasis on the fact that the employees had been "playing softball on the employer's premises for some time." We see nothing unreasonable in LIRC's determination that the softball games had persisted long enough for Styberg to become aware of them by the time of Hetchler's injury. Certainly one could reasonably conclude that when an employer *invites* some sporting activity on its premises, the employer will discover how employees are using the designated area sooner than if the employer attributed no particular significance to a part of the premises not set aside for any special, sports-related purpose.

¶ 29. Now that we have concluded that LIRC reasonably found the treatise rule satisfied in this case, the only remaining issue is whether it was reasonable for the agency to apply the treatise rule in the first instance. In order to be unreasonable, LIRC's decision must directly contravene the words of the statute or be clearly contrary to legislative intent or otherwise without rational basis. *See Heritage Mut. Ins. Co. v. Larsen*, 2001 WI 30, ¶ 27, 242 Wis. 2d 47, 624 N.W.2d 129. We conclude that the decision was reasonable in light of its consistency with *Nigbor* and the statutory language and intent.

¶ 30. As we explained in our discussion above, LIRC's decision clearly comported with *Nigbor*. Like using the restroom, taking a breath of fresh air or a smoke break, or engaging in a bit of horseplay with other employees, playing softball is an inconsequential way to spend a twenty-minute, paid break. Moreover, the fact that the break was *paid* despite the fact that the employees were not at the moment engaged in productive work supports the inference that the deviation from employment was momentary and insubstantial enough in Styberg's opinion as not to warrant requiring them to punch out. This inference is particularly understandable in light of LIRC's findings that Styberg knew or should have known that its employees were playing basketball and softball on their breaks.

¶ 31. It was also not unreasonable for LIRC to depart from *YMCA*. It is not crystal clear from LIRC's opinion whether it declined to follow that case because it believed *Maahs* overruled it or because it was not factually on point. In either case, this departure was based on reason. First, our language in *Bruns Volkswagen, Inc.* could fairly be read to say the *Maahs*

decision overruled *YMCA*. We said, "Neither [*YMCA*] nor [another case] has been *expressly* overruled . . . ." *Bruns Volkswagen, Inc.*, 110 Wis. 2d at 323 (emphasis added). Following a discussion of *Maahs* and our observation that the case was inconsistent with *YMCA*, we further stated, "Accordingly, we agree with DILHR that [*YMCA*] . . . [is] no longer controlling." *Bruns Volkswagen, Inc.*, 110 Wis. 2d at 324.

¶ 32. Second, we note an observation we made above, namely, that being on call but *off duty*, like the employee in *YMCA*, potentially indicates a deviation from employment that was not *momentary* or *insubstantial*. LIRC may have relied on a similar observation in distinguishing on-call from on-break injuries. If so, it could fairly have concluded that the factual scenario in *YMCA* was qualitatively different from that presented in this case. *See United Wisconsin Ins. Co. v. LIRC*, 229 Wis. 2d 416, 423, 600 N.W.2d 186 (Ct. App. 1999) (each worker's compensation case is governed by its own facts and circumstances; language in an opinion must be considered in connection with the particular facts of the case).

¶ 33. We further conclude that LIRC's decision here comported both with the statutory language and purpose. WISCONSIN STAT. § 102.03(1)(c) requires that "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment." The treatise rule specifically addresses when on-break, on-premises recreational activity is an "incident of employment," namely, when the activity has gone on long enough for a reasonable employer to have become aware of it. *See* LARSON & LARSON, *supra,* § 22.03[2], at 22–8-22–9.

¶ 34. WISCONSIN. STAT. § 102.03(1)(e) mandates that the injury also "arise[] out of the employee's

employment." We said in *Bruns Volkswagen, Inc.* that all that is required to meet that standard is that the " 'obligations or *conditions*' of employment create the 'zone of special danger' out of which the injury arose[]." *Bruns Volkswagen, Inc.*, 110 Wis. 2d at 326 (citation omitted; emphasis added). LIRC clearly contemplated several conditions, including the fact that Styberg had erected the hoop and encouraged the employees to use it during their breaks. Certainly, nothing in LIRC's decision plainly contradicts the statutory language.

¶ 35. In addition to its consistency with the statutory language, LIRC reached a decision consistent with the purpose of the statute. The legislature intended a *liberal* construction of the statutory provisions. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 288, 548 N.W.2d 57 (1996). We find no error in the decision on the basis that it went beyond a permissibly liberal construction. It is irrelevant that the courts have not adopted the precise sections of the treatise that LIRC relied upon. Having rejected *YMCA* as controlling, LIRC was faced with a factual scenario of first impression.[8] Faced with the dearth of factually comparable case law, LIRC reasonably relied upon a treatise the courts have found authoritative numerous times in the past. Indeed, LIRC discussed several cases that have adopted various parts of Professor Larson's treatise. No matter what rule LIRC adopted, it had no way of knowing for certain whether the courts would accept that rule. The best the agency could do was to make a reasoned choice, which it did.

---

[8] While arguably LIRC could have employed *YMCA* regardless of its continued validity or factual dissimilarity, we see no reason why it had to do so.

¶ 36. In reaching its decision, LIRC was faced with a value judgment about whether the injury Hetchler sustained while engaging in sporting activity during a paid break period fell within the scope of compensable injuries covered by WIS. STAT. § 102.03. Therefore, we must accord that decision great weight deference. The decision was entirely reasonable, in that it had a rational factual basis, comported with the statutory language and purpose, and was consistent with other case law. Accordingly, we affirm the order of the circuit court upholding that decision.

*By the Court.*—Order affirmed.